877 So.2d 1020 (2004)
STATE of Louisiana in the interest of J.C.O.
No. 38,661-JAC.
Court of Appeal of Louisiana, Second Circuit.
June 2, 2004.
*1021 Herman A. Castete, Derwyn D. Bunton, for Appellant.
James E. Lewis, Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
WILLIAMS, J.
The juvenile, J.C.O.[1], adjudicated delinquent after pleading guilty to oral sexual battery, a violation of LSA-R.S. 14:43.3, appeals from a disposition committing him to the custody of the Department of Public Safety and Corrections ("DPS") until his nineteenth birthday. We affirm.

FACTS AND PROCEDURAL HISTORY
On August 13, 2003, the Winn Parish District Attorney filed a petition to declare J.C.O., born on August 9, 1989, a delinquent child. The petition alleged that on August 2, 2003, J.C.O. committed the offense of oral sexual battery upon another juvenile, J.S.[2], who was under the age of fifteen and at least three years younger than J.C.O. The victim of the act was an eight-year-old girl. On August 18, 2003, J.C.O. appeared in court with his parents, but without counsel, and the court explained J.C.O.'s rights including the privilege against self-incrimination and the right to confront witnesses. The court also explained that the maximum disposition for this offense was placement of J.C.O. with DPS until J.C.O. reached the age of twenty-one. The court entered a denial to the petition on behalf of J.C.O. and ordered the appointment of an attorney.
On September 15, 2003, J.C.O., now represented by counsel, and his parents again appeared in court to allow J.C.O. to enter an admission to the allegations in the petition. At the beginning of the hearing, in the presence of J.C.O. and his parents, the juvenile's attorney informed the court:
I have discussed this matter with the parents and step-parents and the child and at this time, it is my understanding that [J.C.O.] would withdraw his previous denial in this matter and enter an admission. I have told him what the *1022 cap is on the sentence. Also, that the sentence would be next month at [sic] dispositional hearing and we would put on some evidence at that time.
The court then explained the nature of the charge against J.C.O., and in doing so stated:
At the disposition of this matter, the court has advised [counsel for J.C.O.] that the cap on this matter would be that he would be placed in the custody of the State of Louisiana, Juvenile Division until his nineteenth birthday. I will allow a disposition hearing for facts that you may wish to present and also that the state may wish to present at that time....
J.C.O. indicated that he understood the court's statements. Next, the court engaged J.C.O.'s parents in a colloquy which included the following:
Judge: All right. [J.C.O.'s father], you understand the cap that I placed on this matter?
Father: Yes, sir.
Judge: And also, the mother, you understand that?
Mother: Yes, sir.
After explaining the juvenile's constitutional rights, the court then informed J.C.O. and his parents that:
And if you disagree with any decision that is made [sic] of the trial court, there is an appeal that may be made through the Court of Appeals in Shreveport....
The juvenile and his family affirmed that they understood. Subsequently, the court accepted the juvenile's admission to the allegation in the petition and adjudged J.C.O. delinquent based upon his commission of oral sexual battery. The record shows that the court did not order any examination of J.C.O. pursuant to La. Ch. C. art. 888.
On November 17, 2003, the court called the matter for a dispositional hearing, but rescheduled the hearing to December 15, 2003, due to the unavailability of a witness, Matthew Thornton, and the absence of Thornton's counseling report on J.C.O. On December 15, 2003, the court held the dispositional hearing over the objection of the juvenile's attorney. The attorney believed that the matter had been continued when it had not, and a psychological examination of J.C.O. was scheduled for December 17, 2003. The psychological examination had been scheduled by the DPS. The court elected to proceed without the benefit of the examination.
At the dispositional hearing, the juvenile called Steve Turner, a juvenile probation and parole officer with the Office of Youth Development ("OYD"), to testify about the results of his pre-dispositional investigation. The OYD's report was introduced into evidence. The report shows that J.C.O. suffered from asthma and had failed kindergarten and the first and sixth grades due to health problems. He was set to repeat the sixth grade in 2003 and had made good grades, except in math. The OYD spoke with J.C.O., his family, the victim and her family. J.C.O.'s mother and step-father live across the street from the victim and her family, but his father and step-mother lived "on the other side of Winn Parish." J.C.O.'s parents believed that the best disposition would be to order J.C.O. to live with his father, a greater distance away from the victim. The report indicates that J.C.O. claimed to be a follower in the delinquent act, but he was remorseful.
Turner testified that there were no records to show that J.C.O. had "ever been involved in any type of activity with the state"; the report indicated that J.C.O. had no history of inappropriate behavior at home, at school or in the community. Turner also testified that J.C.O. had shown "much remorse" for what he had done. *1023 The recommendation of the OYD was that J.C.O. be placed in the custody of the DPS until his seventeenth birthday, but that custody be suspended and the juvenile be placed on probation with various restrictions until his seventeenth birthday. Turner noted the pending psychological evaluation, but on cross-examination said that the evaluation was not mandatory and was calculated, at least in part, to tailor the rehabilitation services to be provided to the juvenile and not to the disposition.
Turner testified that in reviewing J.C.O.'s record for prior delinquent behavior, he reviewed the files in his office but not those of the Winn Parish Sheriff's Office. He also noted some discrepancies between the official incident reports and the account of the incident given to him by J.C.O.
The report of the North Louisiana Criminalistics Laboratory concerning the impact of the act on the juvenile victim was also entered into evidence. The report, prepared on the day after the act occurred, contains a description of the injury to the victim's genital area, noting abnormal redness and swelling. The report also indicates that the victim suffered pain in her "private area" and burning with urination. Notably, this report contains a description of the incident provided by the victim. The victim was not called to testify. The victim's statement in the report indicates in part that "[J.C.O.] touched me in my private area with his hand and then with his private."
Also called to testify was Matthew Thornton, a family therapist who had counseled J.C.O. after this incident regarding the potential separation between J.C.O. and his family due to the disposition. Thornton testified that J.C.O. appeared to be remorseful and that he and his family wanted to conclude the matter. Thornton's report also was introduced into evidence.
The state called Paul Alsup, an investigator and juvenile officer with the Winn Parish Sheriff's Office, to testify. Alsup testified that in April 2001, he investigated allegations of sexual battery and oral sexual battery against J.C.O. by J.C.O.'s six-year-old and four-year-old male cousins. No conclusion was reached by the sheriff's office, but the matter was referred to the district attorney's office where no further action was taken.
At the conclusion of the dispositional hearing, the court declined to follow the recommendation of the OYD, but instead elected to place J.C.O. in the custody of the DPS. The court stated:
Let the record reflect that those present being the juvenile, both his mother and father.... The court makes the following factual findings, the juvenile in this case is before the court for disposition. The exhibits included the state recommendation, medical record of victim and expert witness to the court. State report recommendation is not accepted by the court due to several matters not being address [sic]. The testimony of the officer does not reflect any investigation with the juvenile officer of Winn Parish. The juvenile office [sic] testified that he had received a previous complaint. No action was taken on this complaint and therefore, should not be considered as a part of this proceeding, other than to reflect the lack of investigation to support the recommendation. The report also reflected the juvenile did understand the nature of his act. The victim report part [sic] responded there was no injury. However, the medical report submitted by the defense reported the victim suffered pain and burning in her private area. The long term mental effect on the juvenile victim was not assessed and will probably only be measured by the victim's recovery for a longer period of time. It *1024 would be error to speculate that [but] to disregard the seriousness of the attack upon the female victim would not be appropriate. The juvenile was at the home of the victim by the consent of his mother and the parents of the juvenile victim. This juvenile, did in fact committed [sic] an oral sexual battery upon a young female. This act was a grave and serious violation of the right of privacy and dignity of a female victim of youthful age. This juvenile is in need of correctional treatment that can only be provided by a secure custodial environment. This juvenile requires extensive treatment and training, to reenforce in his mind that an offense of this nature will not be tolerated and should not occur again in the future. He is in need of a program of therapy and training, which could be provided by a secure custodial environment. To do less would deprecate the seriousness of the crime and fail to provide the behavioral training necessary to ensure this juvenile receives correct training, treatment and education of the consequences of inappropriate sexual behavior. Therefore, the sentence to secure detention is appropriate. File those findings. In accord, therewith, it is ordered and decree [sic] that effective this date, the 15th day of December, 2003, [J.C.O.] having been adjudicated a delinquent of the following offense, oral sexual battery, delinquent disposition shall be until his nineteenth birthday. He is hereby placed in the custody of the Department of Public Safety and Corrections to be kept within the jurisdiction of the court, pending further orders not to exceed his nineteenth birthday. It makes a further finding that reasonable efforts to prevent the removal are not necessary due to the serious nature of the act committed and the lack of local services available to provide for rehabilitation therapy. Reasonable efforts make it possible for his return, would be family therapy and behavioral therapy. The court only makes a recommendation that he be assigned to secure custody. That is the disposition of the court.
J.C.O. did not file a motion to reconsider the disposition, but now appeals, urging only that the disposition was excessive.

DISCUSSION
The most restrictive disposition for J.C.O. in this case would have been custodial placement with the DPS until J.C.O.'s twenty-first birthday. La. Ch. C. arts. 897(D) and 898; LSA-R.S. 14:43.3. However, J.C.O. admitted the allegation against him under the condition that his maximum disposition would be custodial placement with the DPS until J.C.O.'s nineteenth birthday; this "cap" was a part of the plea agreement on the record.
La. Ch. C. art. 803 provides:
The provisions of this Title shall govern and regulate delinquency proceedings of courts exercising juvenile jurisdiction. Where procedures are not provided in this Title, or otherwise by this Code, the court shall proceed in accordance with the Code of Criminal Procedure.
See also La. Ch. C. art. 104. With certain exceptions, a juvenile court retains the power to modify a disposition at any time the disposition is in force. La. Ch. C. art. 909; State v. J.R.S.C., 2000-2108 (La.6/1/01), 788 So.2d 424. This procedure differs from cases involving adult offenders where a legal sentence may be modified only upon a motion to reconsider sentence filed within the time limits set by LSA-C.Cr.P. art. 881.1.
LSA-C.Cr.P. art. 881.2 provides, in part:
(A)(2) The defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which *1025 was set forth in the record at the time of the plea.
Although the court informed J.C.O. that he had the right to appeal, the imposition of a disposition in accordance with an agreed-upon cap is not on appealable decisions. The juvenile's counseled decision to admit the allegations in the petition in exchange for a sentencing cap was an agreement in his favor, and he is not, in the absence of a ruling on a motion to modify the disposition based on specific grounds, entitled to appellate review of the disposition.
Even if this court were to review the disposition on the theory that the juvenile was misled into believing that he was entitled to appeal the disposition, we would not find the disposition constitutionally excessive. Absent a showing of manifest abuse of the wide discretion afforded the juvenile court, a disposition will not be set aside as constitutionally excessive. State in Interest of T.L., 28,564 (La.App.2d Cir.5/8/96), 674 So.2d 1122. The record shows that the criminal act in this case was a sexual offense against an eight-year-old child, and that the child suffered injury to her genital area. There is very little victim impact information in this record, but we agree with the trial court that it would be error to disregard the seriousness of the attack on the victim. The record further indicates that the offender was aware of what he was doing and knew that his acts were wrong.
In its brief, the state makes several assertions that this court cannot verify or refute from the appellate record. The state asserts that J.C.O. was originally charged by police with aggravated rape and sexual battery, but the state elected to formally charge him with oral sexual battery, because it was aware that the judge would obtain a pre-sentence investigation. The state further asserts that J.C.O. was allowed to admit the crime of oral sexual battery in order to prevent any further emotional damage to the child victim should she have to testify at a rape trial. Finally, the state asserts that there was a report of a statement by J.C.O. to the victim's brother before the assault that J.C.O. had said "he was going to screw [J.S.] after she went to sleep." None of the reports or other evidence in this record reflects this information, and we do not consider it in making our decision, such matters being relevant for a hearing under La. Ch. C. art. 909 et seq.
The juvenile judge's decision to require correctional treatment in a custodial environment in accordance with the agreed upon "cap" is amply supported by the record. Consequently, this disposition does not shock our sense of justice and is not grossly out of proportion to the seriousness of the offense. Thus, the disposition is not constitutionally excessive.[3]

CONCLUSION
The disposition imposed upon J.C.O. by the trial court is hereby affirmed.
AFFIRMED.
NOTES
[1] Pursuant to Uniform Rules of the Courts of Appeal 5-1 and 5-2, the initials of all juveniles are used in this opinion in lieu of their names.
[2] The victim's initials were changed to "J.C." in an amended petition filed on August 18, 2003. The victim's initials are actually "J.S." The amended petition also changed the name of J.C.O.'s mother.
[3] We note one error patent. La. Ch. C. art. 892 provides that a dispositional hearing shall be conducted within 30 days of an adjudication of delinquency, but that such period may be extended for good cause. In this case, the dispositional hearing was not held within 30 days of the adjudication, but the delay was due to the preparation of reports in aid of the disposition and was extended in part on motion of the juvenile. We find that these factors when considered together are sufficient cause for delay.