h PEATROSS, J.
After a reversal and remand for new proceedings resulting from this court’s decision in State ex rel. Q.U.O., 39,303 (La.App. 2d Cir.10/27/04), 886 So.2d 1188, the juvenile, Q.U.O., went to trial, was adjudicated a delinquent for simple burglary of an inhabited dwelling and sentenced to secure confinement until age 18. He now appeals. Finding the evidence sufficient to convict, no error in the imposition of sentence and no trial court error in interrogating a witness, the adjudication and disposition are affirmed.

*223
FACTS

After neighborhood children informed Q.U.O.’s mother that he had entered a neighbor’s house and taken items, the mother undertook an investigation of his conduct. She contacted the neighbor, asked about whether a burglary had occurred and police were called to inform them of the misconduct. In a police interview outside the presence of his mother, Q.U.O. admitted the burglary and the taking of items inside the house.
Initially, Q.U.O. was adjudicated delinquent and was sentenced to secure confinement to the age of 21. After finding deficiencies in the Boykin process, the conviction was vacated and the matter was remanded by this court. See State ex rel. Q.U.O., supra. Following trial on remand, Q.U.O. was again adjudicated delinquent, but his sentence was reduced to secure confinement to the age of 18. This appeal ensued.

DISCUSSION

Q.U.O. assigns the following three errors on appeal (verbatim):
1. The trial court erred in imposing a disposition upon Q.U.O. — a fifteen year-old first-time offender — requiring 1 ghis secure juvenile incarceration until the age of [eighteen] for simple burglary of an inhabited dwelling, a violation of La.Rev.Stat. 14:62.2 (West 2005).
2. The trial court erred in adjudicating Q.U.O. delinquent for simple burglary of an inhabited dwelling, a violation of La.Rev.Stat. 14:62.2 (West 2005), based upon insufficient, circumstantial and uncorroborated evidence.
3. The trial court erred in acting as prosecutor and trier of fact in the same proceeding, rendering Q.U.O.’s adjudication hearing fundamentally unfair.

Assignment of error number 2: Insufficiency of evidence to convict

The standard of review of appeal for the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. This standard applies to juvenile delinquency cases. State ex rel. R.T., 00-0205 (La.2/21/01), 781 So.2d 1239; and State v. Interest of W.T.B., 34,269 (La.App. 2d Cir.10/20/00), 771 So.2d 807.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, supra, in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. *224 State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The evidence shows that the burglary-victim, Karen Starr, and the mother of the juvenile were conversing on the telephone. Q.U.O.’s mother asked if there was anything missing from her house. Ms. Starr testified that her search revealed that CDs, condoms, alcohol and sodas were missing from the house. She reported these events to law enforcement. She recovered some of the CDs that were taken, returned by the juvenile’s mother. This witness was at best reluctant, not wanting the juvenile to be punished further for any misconduct. She had signed an affidavit attempting to drop charges against the juvenile.
Deputy Michael Hodges testified that, after Ms. Starr complained of a break-in, he went to investigate. He was given Q.U.O.’s name as a suspect and as the person who had previously broken into her house. Deputy Hodge advised Q.U.O. of his Miranda rights and allowed him to speak to his mother, after which the juvenile admitted taking some alcohol from the residence, but told the officer he had borrowed the CDs in question from the sister of the homeowner. Except for a bottle of alcohol found by Deputy 14Hodge “behind a tree outside the suspect’s home,” no items were recovered from the burglary. Deputy Hodge did not testify definitively that the alcohol by the tree was that taken from the residence. He testified that he “imagined” that the victim had identified it as such, because he logged it into evidence, but he did not remember for sure.
The State rested on the above two witnesses and the defense then called the mother of the juvenile. She testified that, after being told her son had burglarized a neighbor’s house, she called the neighbor to determine the truth. She testified that none of the stolen items were recovered from her son. She also explained the theory that the CDs were loaned to him by the victim’s sister, without permission, and were not stolen. She further testified that her son did not admit committing the burglary to the officer while she was there, and that, after the police talked to him alone, they told her he had confessed.
The court questioned Q.U.O.’s mother about the circumstances of the confession. She testified that “I know for sure that he told them that he didn’t want to talk, that he didn’t want to talk in front of me.” She later explained to the court that she thought “Well, I think he — for one he knew that I was going to be disappointed in him. You know, he know what I expect of him and he know he wasn’t — he wasn’t right.” The mother then made an impassioned plea (2.5 transcript pages, uninterrupted) relating not to guilt (which she admitted), but relative to her son’s punishment (noting that the previous disposition after the guilty plea was secure detention until age 21).
| ¡^According to La. R.S. 14:62.2, simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60.
The evidence in the case sub judice shows a victim who reported a burglary, stating that items were missing from the interior of her home and that the juvenile did not have authority to enter. In addition, at least one object (the bottle of alcohol) that was the subject of the theft was recovered and the juvenile confessed to a police officer. We conclude that this evidence is legally sufficient to convict Q.U.O. of the offense charged.

*225
Assignment of error number 1: The severity of the disposition

Absent a showing of manifest abuse of the wide discretion afforded the juvenile court, a disposition will not be set aside as constitutionally excessive. State ex rel J.C.O., 38,661 (La.App. 2d Cir.6/2/04), 877 So.2d 1020, citing State in Interest of T.L., 28,564 (La.App. 2d Cir.5/8/96), 674 So.2d 1122.
La. Ch. C. art. 901. Disposition guidelines; generally
A. In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.
B. The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.
|fiC. Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:
(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
(3) A lesser disposition will deprecate the seriousness of the child’s delinquent act.
(4) The delinquent act involved the illegal carrying, use, or possession of a firearm
D. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of the disposition or probation:
(1) The child’s delinquent conduct neither caused nor threatened serious harm.
(2) The child did not contemplate that his delinquent conduct would cause or threaten serious harm.
(3) The child acted under strong provocation.
(4) There were substantial grounds tending to excuse or justify the child’s delinquent conduct, though failing to establish a defense.
(5) The victim of the child’s delinquent conduct induced or facilitated its commission.
(6) The child or his family has compensated or will compensate the victim of his delinquent conduct for the damage or injury that the victim sustained.
(7) The child has no history of prior delinquency or has led a law-abiding life for a substantial period of time before the commission of the instant delinquent act.
(8) The child’s delinquent conduct was the result of circumstances unlikely to recur.
(9) The character and attitudes of the child indicate that he is unlikely to commit another delinquent act or crime.
(10) The child is particularly likely to respond affirmatively to probationary treatment.
(11) The commitment of the child would entail excessive hardship to himself or his family.
|7At a sentencing hearing, a juvenile probation officer, Orlando Davis, testified that *226 Q.U.O. was recommended for probation. Poindexter Goldsmith, the supervisor of Green Oaks Detention Center, testified that he had had no trouble with Q.U.O. during his detention and that the juvenile had only minor trouble while in custody. The juvenile made a statement to the effect that he had learned his lesson and wanted a chance to go home and do better.
In resentencing Q.U.O., the trial court adopted its reasons for sentencing from the prior disposition hearing, wherein the court stated:
Although he has never ... been placed on probation previously, due to his own actions that was not an option. He was awaiting sentencing on one charge when he gets — goes and commits a number of other crimes. It’s clear to me — this isn’t his first encounter with the juvenile justice system either ... it is clear to the Court that he is a danger to society and to do anything less than secure custody would be extremely detrimental to society and cause danger ... It is clear to me he has no remorse whatsoever for anything he has done.
In this statement, the trial court is referring to Q.U.O.’s arrest for three “new” felonies (one involving the same victim) while he was released pending disposition in the prior proceedings in this matter. Accordingly, the trial court stated its belief that Q.U.O.’s misconduct had escalated over time and, in addition, the court did not have confidence that Q.U.O. had learned his lesson. In effect, the trial court found that there was an undue risk that he would commit another act of delinquency if not kept in secure confinement and that he was a danger to society as a whole. In support of its conclusions, the trial court properly considered factors such as Q.U.O.’s prior record, his behavior pending disposition, his influence on his younger | Rbrother and his mother’s difficulty in controlling him. We find no error in the trial court’s conclusions.
In Q.U.O.’s favor, however, we note that the trial court did find that a reduction in sentence was warranted, based on the efforts and statements made by his mother regarding disposition. The period of secure confinement was reduced from confinement to age 21 to confinement to age 18. We do not find this disposition to be excessive.

Assignment of error number 3: Trial court as prosecutor

Appellant claims that the trial court went too far in interrogating witnesses in this case. The case cited by Q.U.O., State in Interest of A.H., 95-1094 (La.App. 3d Cir.1/31/96), 670 So.2d 361, in which a juvenile judge acted as the prosecutor and trier of fact within the same proceeding, we find to be easily distinguished. In State in the Interest of A.H., there was no prosecutor other than the city court judge, who acted as both the prosecutor and the trier of fact. Here, there was a prosecutor, and the trial court only asked clarifying questions.
Where the judge is the trier of fact he has the right to question the witness to clarify the evidence in his mind. Unless his participation in the trial is to such an extent and of such a nature that it deprives the defendant of a fair trial, there is no error.
State v. Layssard, 310 So.2d 107 (La.1975).
Here, the trial court did no more than attempt to clarify minor elements in this case and did not become a “prosecutor” in any arguable sense. Appellant’s argument in this regard is without merit.
[9In summary, finding that the evidence was sufficient to convict, the disposition was not excessive and the trial court did not overstep its bounds as a trier of fact, *227 this juvenile delinquency adjudication and disposition will not be disturbed on appeal.

CONCLUSION

For the foregoing reasons, the adjudication of Q.U.O. as delinquent for simple burglary of an inhabited dwelling and the disposition requiring Q.U.O.’s secure juvenile incarceration until the age of 18 are affirmed.
AFFIRMED.
BROWN, C.J., concurs with written reasons.