ROLAND L. BELSOME, Judge.
| Defendant-Appellant appeals his conviction by the Orleans Parish Juvenile Court for one count of carjacking. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Cheryl Green testified that at approximately 7:55 p.m. on January 29, 2007, as she was walking to her vehicle at a filling station, she was approached by a young man who asked her for a ride. Ms. Green stated that she opened the door and allowed the boy to enter her vehicle. As she was driving, when she asked the boy where he wanted to go, he told her to get out of the car. In response, Ms. Green stated that she refused, pushing him, indicating she would not get out because this was her car. Ms. Green testified that after pushing her back, the boy punched her in the mouth, knocking out one tooth and shattering some of her other teeth, and drove away in her vehicle. Ms. Green further testified that after she exited the vehicle, she walked to a nearby house, knocked on the door, and one of the occupants called the police. When the police arrived to take her statement, Ms. 12Green stated that she described the offender as a black male child wearing an orange hooded jacket, but denied providing an approximate age of the offender.[1]
Detective Gregory Powell of the New Orleans Police Department investigated the carjacking incident. Detective Powell testified that as part of his investigation, he canvassed the area surrounding the filling station and questioned individuals in the area, where he obtained the first name
A__ Based on the information that he received from this investigation, Detective Powell stated that he went to Sarah T. Reed High School, where he spoke with the assistant principal to determine whether an African-American student was enrolled by the name of A_who was approximately five feet, four inches tall. Detective Powell testified that he was then given a book with a listing of all the students, and he went through the book and wrote down information for all of the students with the first name A_The detective stated that he subsequently spoke with a few teachers to determine which student by the name of A_fit the physical description that he had obtained from his investigation. Although Detective Powell was unable to obtain a photograph from the school, he testified that he did ultimately obtain a photograph of A.M.,[2] *179 which he included in the photographic lineup that he showed to Ms. Green.
Ms. Green testified that in late February 2007, she received a telephone call from Detective Powell, and that he requested to meet with her so that she could Preview a photo lineup. Ms. Green subsequently met with Detective Powell in his police vehicle to view the lineup of six photographs and identified the defendant from the lineup as the offender. Ms. Green testified that after she selected the defendant’s photograph, Detective Powell instructed Ms. Green to put her signature on the back of the photograph that she selected. Ms. Green also identified the defendant in open court as the person who carjacked her on January 29, 2007.
On March 16, 2007, A.M., a male juvenile, was charged by delinquency petition with carjacking, a violation of La. R.S. 14:64.2, in Orleans Parish Juvenile Court. A.M., represented by private counsel, entered a denial, and A.M.’s counsel stipulated to probable cause. The judgment further set bond at $25,000.00, noting that if bond was posted, A.M. was to be released under house arrest, participate in the Youth Advocate Program, and to not pose a further threat to the community. On the next court date, March 23, 2007, a pre-trial conference was conducted where A.M. was again represented by private counsel, and a trial date was set for May 8, 2007.[3]
In a judgment dated April 16, 2007, the trial court noted that AM.’s private counsel had withdrawn and appointed a public defender from Juvenile Regional Services, Inc. to represent A.M. The court also stated in the judgment that it found good cause to extend the LSA-Ch.C. Art. 877 [4] trial deadline and granted AM.’s Lmotion to set a probable cause hearing. The court then set the probable cause hearing for April 20, 2007, and re-set the trial date for May 9, 2007. In a judgment dated April 20, 2007, the trial court noted that the police officers were not present because there was insufficient time for them to be served prior to the probable cause hearing. Accordingly, the court re-set the preliminary (probable cause) hearing for April 27, 2007 and re-set the trial date for May 11, 2007.
In the interim, on April 23, 2007, A.M. filed a Minor-Respondent’s Motion for Pre-Trial Discovery and for Bill of Particulars, seeking the production of a list of all prospective prosecution witnesses and various other discovery. At the probable cause hearing on April 27, 2007, the court granted the defendant’s motion for subpoena duces tecum to the Administration and Support Bureau of the New Orleans Police Department and denied the request for an appointment of a special process server.[5] *180 On that same date, the State presented testimony from Detective Powell, who testified regarding the victim’s identification of A.M. from the photographic lineup and the other circumstances surrounding A.M.’s arrest. The court found that, based upon Detective Powell’s testimony, the State had established probable cause for A.M.’s arrest and confirmed the May 11, 2007 trial date.[6]
|BPrior to the commencement of trial on May 11, 2007, the court heard an oral motion to suppress the identification of A.M., at which time the State presented testimony from Ms. Green and Detective Powell, both of whom were cross-examined by counsel for defendant. Additionally, the State offered the photographic lineup and the court admitted same, ultimately denying the motion to suppress, but noting the defendant’s objection. At the conclusion of proceedings, the court adjudicated A.M. delinquent of carjacking. On that same date, A.M. posted a $2,500 bond.
On June 7, 2007, a hearing was conducted pursuant to the State’s motion to revoke the bond;[7] the court then reset the bond revocation for June 13, 2007, to allow the State time to establish that A.M. violated the conditions of his release, noting the defendant’s objection. On June 11, 2007, counsel for A.M. filed a Motion to Continue Disposition Hearing.[8] In a judgment dated June 13, 2007, the court granted the defendant’s request for a continuance of the bond revocation hearing and reset the matter for June 18, 2007. After conducting a hearing, the court signed a judgment dated June 18, 2007, granting the motion to revoke the bond.[9]
| (A-M. appeared for disposition on June 19, 2007, at which time Megan Faunce of Juvenile Regional Services testified on A.M.’s behalf and was cross-examined by *181 the State.[10] The defendant also filed into evidence a letter from Jerome Williams, Sr., a mentor and tutor. The trial court noted' that although the charge was for carjacking without a weapon, the carjacking involved the victim being punched in the face to the extent that her teeth were knocked out. The court stated that, considering the status and background of A.M., as well as the criminal act, A.M. would be sentenced to three years with eighteen months suspended, and released on parole for the balance of the eighteen months. The court noted the defendant’s objection and set the matter for sentence review in three months. On June 26, 2007, the court committed A.M. to the Department of Public Safety and Corrections for three years, with eighteen months suspended and parole for the remaining eighteen months. The court further ordered that A.M. be transported to the Department of Public Safety and Corrections within fourteen days.
DISCUSSION
Assignment of Error # 1
In the first assignment of error, the defendant asserts that the trial court erred in failing to suppress the identification of A.M. because the picture lineup was suggestive and thus created a substantial likelihood of misidentification. The defendant argues that the photo of A.M. was not taken at A.M.’s age as of the alleged crime and that one of the photographs in the lineup appeared to be a female.
l?To suppress an identification, a defendant must first establish that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Holmes, 2005-1248, p. 5 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1161. An identification procedure is unduly suggestive if a witness’ attention is focused on the defendant. State v. Holmes, 931 So.2d at 1161 (citing State v. Robinson, 386 So.2d 1374, 1377 (La.1980)). Strict identity of physical characteristics of the individuals in the photographs is unnecessary; all that is needed is a “sufficient resemblance to reasonably test identification.” State v. Savoy, 501 So.2d 819, 821 (La.App. 4 Cir.l986)(citing State v. Smith, 430 So.2d 31 (La.1983); State v. Roberson, 445 So.2d 12 (La.App. 4 Cir.1983)). A defendant who attempts to suppress an identification must prove not only that the identification itself was suggestive, but also that a likelihood of misidentification existed as a result of the identification procedure. State v. Holmes, 931 So.2d at 1161 (citing State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990)).
Even if an identification is considered suggestive, however, an out-of-court identification will be admissible if it is reliable under the totality of the circumstances. Holmes, 931 So.2d at 1161 (citing State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517); see also State v. Ballett, 1998-2568 (La.App. 4 Cir. 3/15/00), 756 So.2d 587, 597-98 (citing Manson[11] factors to determine whether identification *182 was reliable); State v. Washington, 1998-0583 (La.App. 4 Cir. 11/17/99), 747 So.2d 1191, 1197-98 (citing Manson factors to determine whether identification was reliable). Moreover, a court’s decision regarding the admissibility of identification evidence is entitled to great deference and will not|sbe disturbed on appeal absent an abuse of discretion. Holmes, 931 So.2d at 1161 (citing State v. Offray, 2000-0959 (La. App. 4 Cir. 9/26/01), 797 So.2d 764).
In this case, Detective Powell testified that he assembled the photographic lineup by entering A.M.’s information into a computer. The computer then printed out approximately twenty photographs at random that matched the age, complexion, and gender of the suspect. Detective Powell testified that he entered in the age of thirteen for A.M., and that of the twenty photographs that the computer produced, he chose five others to include in the lineup with A.M.’s photograph. Detective Powell further stated that he tried to vary the background colors in the photographs so that one background was not different than the others.
Upon a careful review of the record, we find that the identification was suggestive. Although Detective Powell used the photographs in the lineup that were randomly selected by the computer, AM.’s photograph is nonetheless distinguishable from the others. In the lineup, A.M.’s face fills the entire frame, while the others’ faces do not. Accordingly, this Court must look to several factors to determine, under the totality of the circumstances, whether the suggestive lineup presented a substantial likelihood of mis-identification at trial. State v. Holmes, 931 So.2d at 1161 (citing State v. Martin, 595 So.2d 592, 595 (La.1992)). The United States Supreme Court has established a five-part test for determining whether a suggestive identification is reliable under the totality of the circumstances:
These [factors] include the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
9Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
Applying the first factor to the instant case, we find that, according to Ms. Green’s testimony, she had a sufficient opportunity to closely view the defendant on the date of the incident, both when the defendant approached her at the filling station and while the two conversed in Ms. Green’s vehicle before the carjacking occurred. Likewise, we find that the second factor, the witness’s degree of attention, weighs in favor of admissibility. Ms. Green did not testify that her view of the defendant’s face was obstructed in any way when the he approached her and asked her for a ride. Although Ms. Green testified that she was watching the road while driving, she had an adequate opportunity to view the defendant at close range when speaking with him in her vehicle and during the shoving match that preceded the carjacking. We find that Ms. Green’s attention during her encounter in the vehicle was sufficiently focused on the defendant. The accuracy of Ms. Green’s prior description of her attacker, the third factor, is neutral in this case. Ms. Green testified that on the date of the incident, she described the person who carjacked her to Detective Powell as a black male child who wore an orange hooded jacket, but that she did not recall any of the *183 officers asking her to estimate a particular age range of the carjacker.
Conversely, we find that the fourth factor in the Manson v. Bmthwaite analysis, the witness’ level of certainty at the confrontation, weighs heavily in favor of admissibility in this case. Ms. Green testified that in February 2007, Detective Powell showed her the photo array and asked her whether she recognized her attacker, and that, upon reviewing each of the photographs, she recognized A.M. as the boy who carjacked her. Ms. Green further stated that she |inwas not coerced into selecting the defendant’s photograph and that the detective did not in any way point to any of the photographs in the lineup. Ms. Green was again presented with the lineup during her testimony on May 11, 2007, and when she was asked how she knew the defendant’s photograph was the same one that she had chosen in February, she stated that she remembered the defendant’s nose, because “he had a cute nose.” Ms. Green then identified the defendant as the person who carjacked her in open court.
Finally, the fifth factor, the length of time between the crime and the confrontation, likewise weighs in favor of reliability and admissibility. In this case, just under a month had elapsed between the carjacking incident and Ms. Green’s review of the photo array with Detective Powell. See, e.g., State v. Washington, supra, 747 So.2d at 1197-98 (finding that even if the photographic lineup was suggestive, the identifications by the victims were reliable, as all of the victims except for one (who could not see the defendant) positively identified the defendant in the lineup and at trial; that each of the robbery victims who saw the defendant had sufficient time to view him face-to-face; and that the photographic lineups occurred within six weeks of the earliest robbery).
Pursuant to the guidelines in Manson v. Bmthwaite, we now turn to the issue of whether the suggestive lineup had any corrupting effect. We find that it did not. In this case, as noted above, Ms. Green had sufficient opportunity to view her carjacker face-to-face and was presented with a photo array soon after her attack. Nothing in the record indicates any intention by the State to guide Ms. Green’s attention to the defendant. Accordingly, upon a careful review of the record, we find that Ms. Green would have properly identified the defendant as the person who carjacked her even if the lineup had not been unduly suggestive.
| n Therefore, because Ms. Green’s identification of the defendant was rehable under the totality of the circumstances, the identification of the defendant was properly admitted by the trial court.[12] This assignment of error lacks merit.
*184 Assignment of Error # 2
In the second assignment of error, the defendant contends that the trial court erred when it allowed thirty days to elapse between adjudication and disposition without a finding of good cause as required by Article 892 of the Children’s Code.[13] Article 892 of the Children’s Code provides as follows:
Prior to entering a judgment of disposition, the court shall conduct a disposition hearing. The disposition hearing may be conducted | ^immediately after the adjudication and shall be conducted within thirty days after the adjudication. Such period may be extended for good cause.
In this case, the record indicates that on June 11, 2007, counsel for A.M. submitted a Motion to Continue Disposition Hearing.[14] The Motion to Continue sought to *185 have the disposition hearing scheduled for a date subsequent to the Article 857 transfer hearing. In State in the Interest of J.C.O., 38,661 (La.App. 2 Cir. 6/2/04), 877 So.2d 1020, 1025, n. 3, the Court noted that although the disposition hearing was not conducted within thirty days, it “was extended in part on motion of the juvenile” and that the delay was also due to the preparation of reports in aid of the disposition. Accordingly, the J.C.O. Court found that those factors, considered together, were sufficient cause for the delay. Id.
Similarly, in State in the Interest of 2001-1218, p. 10 (La.App. 3 Cir. 2/6/02), 807 So.2d 1149, 1155-56, the Court found that a failure to conduct a disposition hearing within thirty days after adjudication because of a delay resulting from the juvenile’s objection to the predisposition report constituted good cause for the delay. Finally, in State in Interest of T. T., 96-06 (La.App. 3 Cir. 5/8/96), 677 So.2d 466, 469, also cited by the defendant, the court found that although there was a delay beyond that which was permitted under Article 892, the three-day delay was harmless error where prejudice was not shown. Accordingly, the court held that “the drastic remedy of divesting the trial court of its power to sentence is unwarranted under the facts of this case,” and the three-day delay was | ^harmless. Id; see also State in Interest of KG., 34,535 (La.App. 2 Cir. 1/24/01), 778 So.2d 716, 725 (finding that defendant failed to establish any prejudice resulting from the delay; that the three-day delay was not extreme or clearly unjustified; and that any error resulting from the delay was harmless and did not necessitate the drastic remedy of divesting the court of its power to sentence).
In this case, in addition to the defendant’s request for a continuance of the disposition hearing on June 11, 2007, the defendant also requested a continuance for the bond revocation hearing, which was granted in the court’s June 13, 2007 judgment, re-setting the hearing for June 18, 2007. Additionally, as previously noted, in the Section “E” case against A.M., a hearing was pending pursuant to the State’s LSA-Ch.C. art. 857[15] motion seeking to have A.M. transferred to criminal court. Most importantly, the defendant does not allege or demonstrate any prejudice resulting from the delay in this case.
We find that all of the aforementioned factors, when considered together, constituted good cause to extend the disposition hearing. Additionally, no prejudice was alleged nor was caused by the eight-day delay in this case, and any 114error in the delay was harmless. See State in In *186 terest of T.T., supra,: State in interest of K.G., supra. This assignment of error lacks merit.[16]
Assignment of Error # 3
The defendant further argues that the juvenile court abused its discretion in placing him in the custody of the Office of Youth Development when no evidence was presented demonstrating that secure placement was appropriate for the treatment and rehabilitation of A.M. The defendant further argues that generalized sentencing based solely on the nature of the offense is disfavored by the Children’s Code.
In this case, a review of the record indicates that the court took numerous factors into account when imposing A.M.’s sentence. At the disposition hearing on June 19, 2007, the trial court stated in part:
The Code, in instructing the Court on how to sentence, requires us to consider both the status of the youth, the background of the youth, as well as the background of the crime for which the youth as been adjudicated. And specifically to reach a sentence which is appropriate for the status of the youth, and one which is not deprecate the crime [sic], which has occurred. Based on that, I’m going to sentence the youth to three years in the custody of the Department of Corrections. I will suspend eighteen months of that time. He will serve eighteen months in the custody of the Department of Corrections. He will then be released on parole for the balance of the eighteen months. I note the Defense’s objection, for the record. And we will set this matter for a review in three months.
Based on the trial court’s remarks at the disposition hearing, we find that the argument that the trial court imposed a generalized sentence based on the nature of the offense lacks merit.
hsWith respect to the argument that no evidence established the need for placement of the defendant with the Office of Youth Development, we note that courts are governed by La.Ch.C. art. 898 with regard to juvenile disposition hearings and evidence. Article 893 provides in part that all evidence offered by the juvenile or by the state shall be received by the court and may be relied upon even if such evidence is not admissible at the adjudication hearing. La.Ch.C. art. 893.[17] *187 Furthermore, we note the well-settled principle that vast discretion is afforded to courts in juvenile matters due to the special nature of the proceedings. La.Ch.C. art. 901(B); State v. C.K., 05-475 (La.App. 5 Cir. 1/17/06), 922 So.2d 616, 620. The court must balance the juvenile’s needs with the best interest of society. Id.
11fiArticle 901(C) of the Children’s Code, which governs juvenile disposition guidelines, provides:
Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if any of the following exists:
(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.
(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.
(3) A lesser disposition will deprecate the seriousness of the child’s delinquent act.
(4)The delinquent act involved the illegal carrying, use, or possession of a firearm.
In this case, at the disposition hearing, the trial court expressly stated the concern to determine a sentence which would not deprecate the seriousness of the crime. See La.Ch.C. art. 901(C)(3). Moreover, at the time of the disposition hearing, Article 901(C)(1) of the Children’s Code was plainly a factor, as A.M. was being detained at that time due to the charges for armed robbery. Finally, the defendant presented evidence regarding his mental health issues, illiteracy, and his urgent need for counseling at the disposition hearing, a factor contemplated in La. Ch.C. art. 901(C)(2). The court heard all of the evidence and concluded that the best interests of both A.M. and society would be met by placing A.M. with the Office of Youth Development. Based on the foregoing discussion, and considering the trial court’s vast discretion with respect to juvenile matters, we find that this assignment of error lacks merit.
*188 Assignment of Error # 4
In the fourth assignment of error, the defendant argues that the trial court erred when it found A.M. guilty beyond a reasonable doubt. It is well-settled that a factfinder’s credibility determinations shall not be disturbed unless they are clearly 117contrary to the evidence. See, e.g., State v. Vessell, 450 So.2d 938, 943 (La.1984); State v. James, 2004-0878, p. 23 (La.App. 4 Cir. 2/23/05), 897 So.2d 821, 833.[18] Likewise, a trier of fact is vested with great discretion in its determination of the credibility of witnesses. State v. Varnado, 1997-2825, p. 15 (La.App. 4 Cir. 9/22/99), 753 So.2d 850, 859. Moreover, this Court has held that testimony from only the victim is sufficient to prove the elements of a crime. Id. (citing State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084, writ denied, 95-2557, (La.2/2/96), 666 So.2d 1087).
In this case, the trial court heard all of the evidence and testimony presented from each of the witnesses. The court had the opportunity to observe the demeanor of Ms. Green as she testified in court regarding her positive identification of A.M. from the photographic lineup as the person who attacked and carjacked her, and the court determined that she was a credible witness. Although no physical evidence was presented that connected A.M. to the crime in the instant case, we cannot say that the factfinder’s determinations are clearly contrary to the evidence. For these reasons, and for the reasons cited in the discussion of the first assignment of error, we find that this assignment of error lacks merit.

CONCLUSION

For the reasons stated above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. At trial, Detective Gregory Powell was questioned with regard to an incident recall sheet that listed the suspect's description as eighteen to twenty years of age. Detective Powell testified that this information was likely entered by an operator who took the information that was transmitted by the caller, typed it into the computer, prioritized it, and then dispatched it to a police officer. Detective Powell could not confirm whether or not this information had been transmitted over a police radio.
At the probable cause hearing, Detective Powell testified that Ms. Green described her attacker as a young male, about fourteen or fifteen years of age, approximately five feet four inches tall, who appeared to be harmless and that he looked like a kid.

. At the probable cause hearing, Detective Powell testified that he learned from talking to A.M.'s family members that A.M. "had gotten into some trouble in Opelousas.” Detective Powell stated that he then contacted a detective in Opelousas, because Orleans Parish did not have a photograph of A.M., but through Opelousas, he was able to obtain a "CID number” and obtain a photograph of A.M. with which to make a photographic lineup.

. The March 23, 2007 judgment noted that A.M.'s private counsel would represent him for that hearing only; and set a motion to determine counsel for April 17, 2007. The judgment appointing the public defender, however, is dated April 16, 2007.

. Article 877 of the Children’s Code provides:
A. If the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within thirty days of the appearance to answer the petition.
B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.
C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.
D. For good cause, the court may extend such period.
La.Ch.C. art. 877 (emphasis added).

.On May 3, 2007, the court ordered that A.M. be evaluated by a physician, and further ordered that the Youth Services Center was to administer any medication that was prescribed to A.M.

. On May 9, 2007, counsel for A.M. filed an Emergency Motion for Order Directing the New Orleans Police Department to Show Cause regarding noncompliance with the document subpoenas. On that same date, the trial court ordered a representative from the New Orleans Police Department Administration and Support Bureau to appear on May 10, 2007 to show cause why it should not be held in contempt of court for failure to comply with the subpoenas. On May 10, Joe Dirosa, representing the New Orleans Police Department, appeared; the New Orleans Police Department was ultimately not held in contempt.

. The State sought to have the court take judicial notice of a folder containing information regarding a case pending in Section "E” where A.M. was charged with five counts of armed robbery. At the hearing, the State confirmed that A.M. was being detained with regard to the Section "E” case.

. The defendant’s Motion to Continue Disposition Hearing acknowledged that on May 31, 2007, A.M. had been petitioned with a separate delinquent act and that the State had subsequently filed a Motion to Transfer Prosecution to Orleans Parish Criminal District Court pursuant to La. Ch.C. art. 857 (allowing for juveniles fourteen years of age or older at the time of the commission of the alleged crime to be transferred from juvenile court to criminal court) in the Section "E” case.

.At the hearing, the State submitted that A.M. was placed on 24-hour house arrest after being found guilty of carjacking on May 11, 2007; that A.M. had paid bond and was released; that while released, A.M. was arrested for armed robbery on May 29, 2007; and that because A.M. did not comply with the conditions of his release from house arrest, that his bond should be revoked and that A.M. should remain in custody. Counsel for A.M. argued that while there was probable cause for the arrest and continued custody of A.M., that clear and convincing evidence had not been established pursuant to Article 826 of the Children’s Code. Although the transcript reveals the trial court's stated intention to deny the motion to revoke the bond, the June 18, 2007 judgment reads: "The Court, based on the oral argument for the motion to revoke the bond, hereby grants said motion.’’

. A letter written and signed by Ms. Faunce was also filed into evidence on June 19, 2007. In the letter and in her testimony, Ms. Faunce attested that A.M. had been diagnosed with Attention Deficit-Hyperactivity Disorder when he was six years of age; that a licensed social worker on the Juvenile Regional Services staff believed A.M. suffered from post-traumatic stress disorder as a result of witnessing an altercation that preceded the murder of his father by his first cousin in 1999, as well as seeing his father’s body being carried away in a body bag subsequent to the murder; and that A.M. had fathered a child when he was thirteen years of age.

. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), is discussed infra.

. We find this Court's decision in State v. Ballett, 1998-2568 (La.App. 4 Cir. 3/15/00), 756 So.2d 587, noteworthy. In Ballett, the defendant was convicted, inter alia, of three counts of aggravated rape. One of the defendant’s assignments of error was that the trial court erred in denying his motion to suppress identification because the photographic lineups presented to the victims were unreliable and suggestive. Ballett, 1998-2568, p. 17, 756 So.2d at 597. This Court was unable to determine, due to the poor quality of the copies of the photographs used in the lineups, whether the lineups were unduly suggestive. Id. This Court found, however, that “even if the photographic lineup was suggestive, the identifications made by the victims were reliable.” Id. at 598. Each of the three rape victims identified the defendant as the perpetrator. Id. One witness, B.W., identified the defendant in a photographic lineup approximately two and one half months after the incident. Id. B.W. testified that she first saw the defendant when she passed him on the street as he knelt down to tie his shoes. Id. The defendant then came up behind her, told her he had a gun, and forced her into a poorly-lighted abandoned building. Id. The *184 defendant contended that due to the poor lighting, B.W. could not have had an adequate opportunity to see his face. Id. This Court found that there was sufficient time for B.W. to view the defendant, as she stated that she saw his face when she passed him on the street, and then was face-to-face with the defendant when he raped her. Id. Moreover, B.W. "was positive of her identification of the defendant at trial and when she reviewed the photographic lineup.” Id.
Likewise, T.G., a second witness, identified the defendant as her attacker approximately one month after the incident. Id. T.G. testified that she was approached by the defendant when he hugged her after she finished using a pay phone, then released her when she asked what he was doing. Id. The defendant then boarded the same bus as T.G., then followed her off the bus, implied he had a weapon and forced her into an abandoned building. Id. T.G. testified that she had ample opportunity to view the defendant, both when he hugged her by the phone booth and when he boarded the same transit bus. Id. Additionally, T.G. identified the defendant at trial as her attacker. Id.
A third witness, T.L., first saw the defendant when he was walking towards her on the street. Id. Before she passed the defendant, he grabbed her and was face-to-face with her. Id. T.L. testified that the defendant then forced her into an abandoned building and raped her. Id. This Court noted that "despite the defendant’s contentions that the perpetrator was behind the victim, there is evidence to show that the victim was face to face with the defendant.” Id. T.L. selected the defendant from a photographic lineup four days after the incident and stated at trial that she was positive of her identification of the defendant. Id.
A fourth witness, J.H., testified that the defendant grabbed her and forced her into an abandoned building, displayed his weapon and instructed her to be quiet. Id. J.H. testified that “she was able to get a good look at the defendant’s face when he grabbed her and took her into the abandoned building.” Id. Shortly after the incident, J.H. identified the defendant from a photographic lineup and also at trial. Id. at 598-99.
In upholding the trial court’s denial of the defendant's motion to suppress the identifications, this Court stated:
[T]he victims had more than adequate time to view the defendant during the offenses. Each of the victims noticed the defendant before he approached and grabbed them. They each stated that they were face to face with the defendant at least one time during the incidents. Thus, even assuming the lineups were suggestive, the victims’ identifications were reliable. The trial court did not err when it denied the defendant's motion to suppress identifications.
Id. at 599 (emphasis added).

. A.M. was adjudicated on May 11, 2007, and the disposition hearing was held on June 19, 2007.

. The Motion to Continue Disposition Hearing noted that A.M. was petitioned with committing a separate delinquent act on May 31, 2007 that was pending in Section "E”; that on June 7, 2007, the State filed a Motion to Transfer Prosecution to Orleans Parish Criminal District Court in the Section "E” case pursuant to Article 857 of the Children's Code; that trial in the Section "E” case was scheduled for July 2, 2007; that results on both the Article 857 transfer hearing and the adjudication in the Section "E” case will affect A.M.’s disposition in the instant case; and that counsel for A.M. would seek health *185 evaluations for the Article 857 hearing. The court denied the motion to continue in an order signed June 12, 2007.

. LSA-Ch.C. art. 857 provides, in pertinent part:
A. The court on its own motion or on motion of the district attorney may conduct a hearing to consider whether to transfer a child for prosecution to the appropriate court exercising criminal jurisdiction if a delinquency petition has been filed which alleges that a child who is fourteen years of age or older at the time of the commission of the alleged offense but is not otherwise subject to the original jurisdiction of a court exercising criminal jurisdiction has committed any one or more of the following crimes:
(1) First degree murder.
(2) Second degree murder.
(3) Aggravated kidnapping.
(4) Aggravated rape.
(5) Aggravated battery when committed by the discharge of a firearm.
(6) Armed robbery when committed with a firearm.
(7) Repealed by Acts 2001, No. 301, § 2.
(8)Forcible rape if the rape is committed upon a child at least two years younger than the rapist.

. In support of the argument that the court did not. conform with the requirements of Article 892 of the Children’s Code, the defendant relies in part on cases where good cause was not found in a timely manner with respect to Article 877 of the Children’s Code (State in Interest of R.D.C., Jr., 93-1865 (La.1994), 632 So.2d 745) (granting a motion to dismiss a refiled petition as untimely pursuant to La.Ch.Code. art. 877) and State in Interest of J.B. and G.M., 2003-0587 (La.App. 4 Cir. 12/10/03), 863 So.2d 669 (affirming a dismissal for failure to establish good cause for delay under La.Ch.Code art. 877). As previously noted, however, the trial court specifically stated in its April 16, 2007 judgment that it found good cause to extend the Article 877 deadline.

.
A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.
B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.
*187 C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.
D. If the court finds that the child is in need of treatment or rehabilitation as a delinquent child, the court shall proceed immediately to make any appropriate disposition authorized by Articles 895 through 899.
La.Ch.C. art. 893 (emphasis added).
For example, in State ex rel. K.H., 98-632 (La.App. 5 Cir. 12/16/98), 725 So.2d 583, 587, the court found that the trial court properly took into consideration both unsubstantiated allegations of gang membership as well as two burglary charges which had been dismissed, noting that the purpose of disposition hearings is to permit the court to hear evidence that will assist in determining whether a juvenile is in need of rehabilitation or treatment. (citing La.Ch.C. art. 893(A); State in Interest of O.R., 96-890 (La.App. 5 Cir. 2/25/97), 690 So.2d 200).
Similarly, in State in Interest of Hickerson (La.App. 1 Cir. 12/21/1982), 424 So.2d 1233, 1234, the court found no merit in the argument that the trial court erred in refusing to admit or consider factors of the needs of the child and alternatives to incarceration. The court concluded that considering the violent nature of the offense (attempted second-degree murder) and the juvenile's behavioral problems (i.e., being suspended from school three times in one year, leaving home without permission, violating conditions of his probation, being referred to the court for theft and subsequently for illegally carrying a weapon), the trial court did not abuse its discretion in refusing to consider alternatives to incarceration. Id.

. In James, this Court found that "[w]hile there was no physical evidence to link the defendant to the murder, Dwight Nelson [the person with the victim at the time the victim was shot] ... positively identified the defendant both via a photographic lineup and in court as the man who shot the victim. While Nelson may not have been a sterling witness, the jury was able to observe his demeanor and apparently believed his testimony, a credibility determination this court must not disturb unless it is strictly contrary to the evidence.” James, supra (citing State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432)(emphasis added).