931 So.2d 1157 (2006)
STATE of Louisiana
v.
Joseph HOLMES.
No. 2005-KA-1248.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2006.
*1158 Eddie J. Jordan, Jr., District Attorney, Battle Bell IV, Assistant District Attorney, New Orleans, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Counsel for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III, Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Appellant Joseph Holmes appeals his conviction for purse snatching. We affirm.

STATEMENT OF FACT
Celeste Orris stated that on July 25, 2004 she went out for the evening with several people. Orris' group arrived at the Balcony Bar at approximately 9:00 P.M. Orris stated that she and her friends consumed alcohol while at the Balcony Bar. Orris' group eventually left the Balcony Bar and went to the Half Moon Bar. Orris testified that the Half Moon Bar is located near the corner of Sophie Wright and St. Mary Streets in New Orleans. Orris arrived at the Half Moon Bar at approximately 1:30 a.m. on July 26, 2004. Orris stated that she consumed alcohol while at the Half Moon Bar. Neither the state nor the defense introduced any evidence as to the amount of alcohol consumed by Orris at either bar over the course of the evening. At approximately 2:30 A.M., Orris and her friends were sitting at a table on the sidewalk outside of the bar. Orris testified that she was sitting in a chair with her back to the street with her black leather handbag was sitting beside her on another chair when a man rode up to her on a bicycle, snatched her purse, and rode away. Orris stated that she had seen the man earlier that evening *1159 inside the Half Moon Bar. Orris described the man to the police as approximately twenty to twenty-five years old and wearing a white t-shirt and blue jeans. Orris testified that her purse contained ten to fifteen dollars in cash and a cell phone.
Orris testified that Sgt. Chris Billiot contacted her approximately two weeks after the incident and asked her to come to the police station. At the police station, Orris viewed a photographic lineup and was asked whether one of the photographs depicted the man who snatched her purse. After consideration, Orris picked photograph two, and signed and dated the back of the photograph in the presence of Detective Sandra Contreras. Orris testified that Detective Contreras told her nothing prior to the lineup, and stated that Detective Contreras neither suggested whom she should pick nor promised her anything. In court, Orris identified the lineup and the photograph she picked at the police station. Further, Orris also identified defendant as the purse-snatcher.
Questioning by the State and defense expanded upon Orris' testimony at trial. Specifically, Orris testified that after arriving at the Half Moon Bar she saw defendant sitting at the bar drinking a beer. Orris testified that defendant was approximately five feet away from her when she saw him in the bar. When asked how she knew that the man she saw sitting at the bar was the same man who snatched her purse, Orris testified: "Because he was coming from this direction and I could see him out of the corner of my eye and I saw him grab my purse, because it was right beside me and I saw him continue going." Orris stated that there was no physical contact between her and defendant. Orris also testified that in addition to cash and a cell phone, her stolen purse also contained a credit card and her friend's passport. Following the incident, Orris' friend telephoned the police, who came out and took a statement from Orris. Orris testified that that at the photo lineup the police did not force her to select a photo, did not promise her anything for selecting a photo, and did not suggest anything to her.
Detective Sandra Contreras testified that she was assigned to the Sixth District on July 26, 2004 and participated in the investigation of the foregoing purse snatching. Detective Contreras stated that her sergeant reassigned the case to her on July 28, 2004. After getting the assignment, Contreras read the incident report and learned that the prior detective on the case had completed a subpoena duces tecum for the production of Orris' cell phone records. After receiving Orris' phone records Contreras began tracking the cellular phone activity on the records and developed defendant as a suspect. Detective Contreras described her phone record investigation accordingly:
After I obtained the cell phone numbers, I put them into an information system that gave me the address to which the phone was registered as well as the person who the phone was registered to. After that, I entered it into a data base. At which time, it revealed several subjects at several locations.
From there, I just tracked it back to  I tracked it back to the subjects. Then I entered those names into another data base. And from there, I was able to link, I believe it was, two subjects to the 6th District area.
Detective Contreras clarified that Orris' phone was used to make several calls to three addresses. The first location was a Benson Street address. It was subsequently learned that defendant's girlfriend lived at the Benson Street address. Under cross-examination, Detective Contreras admitted that several individuals lived at the Benson Street address, some of *1160 whom fit the description provided by Orris of the purse-snatcher. However, Detective Contreras explained that she discounted these other individuals as suspects because defendant had a Felicity Street address at the time of the incident, and the purse-snatcher was last seen fleeing down Felicity Street.
The second location was a Deslonde Street address. Detective Contreras stated that no one was at this address when she visited it. Detective Contreras noted that she learned that an individual later came back to this address but she discounted him as a suspect because there was no evidence that he was in the Sixth District at the time of the incident.
The third location was a Werner Street address. This address yielded another potential suspect, one Charles Baumer. Detective Contreras could not locate Baumer but nevertheless spoke with the owner of the residence at the Werner Street address. The owner told Detective Contreras she was on vacation at the time of the calls and that no one was supposed to have been in the house at the time. The phone records indicate that two calls were placed to the Werner Street address and that someone answered and spoke to someone for a number of minutes. Nevertheless, Detective Contreras discounted Baumer as a suspect in the underlying crime because he did not fit Orris' description of the purse-snatcher.
Accordingly, Detective Contreras concluded that defendant was the most likely suspect for the purse snatching. Moreover, Detective Contreras testified that she ordered a photo-lineup containing defendant's photograph. Detective Contreras also stated that she filed the photo-lineup into evidence after Orris viewed the lineup.
Sergeant Chris Billiot testified that he was assigned to the Sixth District and investigated the July 26, 2004 purse snatching. Sergeant Billiot testified that he prepared a photographic lineup containing defendant's photograph. Sergeant Billiot also interviewed Orris and presented to her the photographic lineup. Billiot testified that Orris viewed the photos, identified a perpetrator, and signed and dated the back of the perpetrator's photo. Sergeant Billiot stated that while Orris was positive in her identification, she was not one hundred percent positive.
Further, Billiot testified that he did not force, threaten, or coerce Orris into making an identification. Similarly, Sergeant Billiot stated that he promised nothing to Orris in exchange for an identification and gave no suggestions to her. At trial, Sergeant Billiot identified State Exhibit One as the photo lineup he prepared in connection with this case. Further, Sergeant Billiot also identified picture two as the photo selected by Orris, stated that it was a photo of defendant, and identified defendant in court as the man asserted by Orris to be the purse snatcher.
Sergeant Billiot arrested defendant after Orris identified defendant as the purse-snatcher. Sergeant Billiot explained that defendant was already in police custody in connection with an unrelated incident. Moreover, Sergeant Billiot testified that upon his arrest defendant stated that he was with his girlfriend at her Benson Street address at the time of the purse snatching.

ASSIGNMENTS OF ERROR
1. The trial court erred by failing to grant Defendant's motion to suppress the identification because the identification was improperly and unconstitutionally suggestive.
2. The evidence was insufficient to establish Defendant's guilt for the offense.

*1161 LAW AND ANALYSIS
Defendant contends that the trial court erred by failing to grant his motion to suppress the identification because the identification was improperly and unconstitutionally suggestive.
La.Code of Criminal Procedure art. 703(D) provides that the defendant has the burden of proof on a motion to suppress an out of court statement. To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Moreover, a defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that a likelihood of misidentification existed as a result of the identification procedure. State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990).
The Supreme Court has held that even if the identification could be considered suggestive, it is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, 98-1673 (La.9/8/99); 750 So.2d 916, 932. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517. If a suggestive identification procedure has been proved, a reviewing court must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification at trial. State v. Martin, 595 So.2d 592, 595 (La.1992). The U.S. Supreme Court has set forth a five-factor test to determine whether a suggestive identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, Id. The corrupting effect of the suggestive identification itself must be weighed against these factors. Martin, 595 So.2d at 595.
In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification. State v. Lewis, XXXX-XXXX (La.App. 4 Cir. 9/29/04); 885 So.2d 641, 652. A trial court's determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Offray, XXXX-XXXX (La.App. 4 Cir. 9/26/01); 797 So.2d 764.
In the present case, the defendant asserts that the photographic lineup was unduly suggestive because his photograph (one of six) was placed in the top center position and because the background shade of his photograph was lighter than the others.
The photo lineup is not available on appeal, but nothing in the record suggests that the photo lineup was unduly suggestive. Officer Contreras used a computer program to choose other individuals to place in the lineup. The program allows entry of such information as race, gender, *1162 age, complexion, and height to find other individuals for a photo lineup. Nothing in the record suggests any intention by the state to guide Ms. Orris' attention to Defendant. Defendant's hypothesis that a larger head and different background on his photograph unduly brought Ms. Orris' attention to him is conjecture with no foundation in the record. Furthermore, nowhere did Defendant ever question Ms. Orris about the impact of any such alleged differences on her decision. Accordingly, nothing in the record shows that the trial judge abused his discretion in finding that the lineup was not unduly suggestive.
In his second assignment of error, defendant argues that the state's evidence was insufficient to establish that he snatched Orris' purse. Essentially, Defendant's second assignment of error reiterates the same criticisms leveled by Defendant in his first assignment of error against the state's evidence. The state asserts that Defendant ignores the entirety of the record, choosing instead to focus on the weak spots in the state's case, i.e., Orris' consumption of alcohol, the fact that the perpetrator was behind Orris for a period of time, and Sergeant Billiot's testimony that Orris was less than one hundred percent certain in her identification. Moreover, the state also points out that the linking of defendant to the crime is not solely dependant upon Orris' testimony. Specifically, the state directs this Court to the phone records from Orris' cell phone and Detective Contreras' subsequent investigation into the calls placed with Orris' phone after the purse snatching.
When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. State v. Bright, XXXX-XXXX (La.4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). However, the touchstone of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. State v. Hampton, 98-0331 (La.4/23/99); 750 So.2d 867, 880.
As noted previously, defendant attacks Orris' identification of him as the perpetrator on numerous fronts. Defendant asserts that Orris did not have a good view of the purse-snatcher. The defendant also argues that Orris' perception was clouded by alcohol and that her description of the perpetrator's age was off by several years. Further, defendant contends that Sergeant Billiot's testimony that Orris was less than one hundred percent certain in her identification supports a reversal of his conviction. Essentially, the defendant contends that the trial court could not have rationally accepted Orris' testimony in the face of these facts.
However, a plain reading of the evidence refutes defendant's contention that the trial judge erred in regards to the identity issue. As discussed previously, Orris clearly testified at trial that: 1) she first saw defendant in the Half-Moon Bar sitting at the bar drinking; 2) defendant was only five feet away from her when she saw him sitting at the bar; 3) she saw defendant *1163 coming towards her on a bicycle; 4) she saw defendant snatch her purse; 5) she watched defendant ride past her after snatching her purse; and, 6) the person on the bicycle was the same person she saw in the bar. Further, the description of defendant given by Orris' to the police after the incident was accurate, aside from the seven-year age discrepancy.
The state's case against defendant was also proven through the use of independent evidence. As noted previously, the post-theft phone records from Orris' cell phone showed that the thief made a phone call to a Benson Street address. Through her investigation, Detective Contreras learned that defendant's girlfriend lived at the Benson Street address. Under cross-examination, Detective Contreras admitted that several individuals lived at the Benson Street address, some of whom fit the description provided by Orris of the purse-snatcher. However, Detective Contreras explained that she discounted these other individuals as suspects because defendant had a Felicity Street address at the time of the incident, and the purse-snatcher was last seen fleeing down Felicity Street. Moreover, upon his arrest defendant told Sergeant Billiot that he was at the Benson Street address at the time of the present incident.
The Supreme Court has held that independent evidence that a crime has been committed and testimony by a victim or eyewitness generally is sufficient to support a guilty verdict. Bright, 776 So.2d at 1148. In this case, the defendant's arguments do not establish that the independent evidence, when coupled with Orris' eyewitness identification, is unworthy of a finding of reliability or that a reasonable likelihood of misidentification exists. Accordingly, defendant's second assignment of error lacks merit.

CONCLUSION
For the foregoing reasons we affirm Joseph Holmes' conviction and sentence.
AFFIRMED.