STATE OF LOUISIANA
v.
RONALD ADAMS.
No. 2008-KA-032.
Court of Appeals of Louisiana, Fourth Circuit.
October 8, 2008.
NOT DESIGNATED FOR PUBLICATION
KEVA LANDRUM-JOHNSON, District Attorney, DAVID S. PIPES, JR., Assistant District Attorney, Counsel for Appellee, the State of Louisiana.
HOLLI HERRLE-CASTILLO, LOUISIANA APPELLATE PROJECT, Counsel for Defendant/Appellant.
Court composed of Judge JONES, Judge BAGNERIS, SR., and Judge LOMBARD.
DENNIS R. BAGNERIS, SR., Judge.
On December 12, 2005, the State charged the defendant with armed robbery with a firearm, a violation of La. R.S. 14.64.3. The defendant pled not guilty at his arraignment on December 28, 2005. The trial court found probable cause at the motions hearing on September 22, 2006, but deferred ruling on the motion to suppress the identification, and took additional testimony on December 6, 2006.
On February 13, 2007, the defendant re-urged his motion to suppress the identification, which the trial court granted. On application for supervisory writs filed by the State, this Court reversed the trial court's decision regarding the photographic lineup, and remanded the case for trial. Following another hearing on the defendant's motion to suppress the identification on June 5, 2007, the trial court denied the motion.
The jury found the defendant guilty as charged on July 3, 2007.
On August 17, 2007, the State filed a multiple bill of information charging the defendant as a fourth felony offender. The trial court held a hearing on the multiple bill on October 12, 2007. The State amended the bill of information to charge the defendant as a third time felony offender, to which the defendant pled guilty. That day the trial court sentenced the defendant to 75 years without benefit of parole, probation or suspension of sentence.[1] On October 17, 2007, the trial court granted the defendant's Motion for Appeal. For the following reasons, we hereby affirm defendant's conviction and sentence.

FACTS:
At about 8:00 a.m. on October 30, 2004, two men in a 1990 Chrysler LeBaron car pulled up to Shepard Baumer and Michael Gangi as they were standing outside Gangi's seafood business in the 600 block of Mazant Street. The passenger of the car stuck a gun out the window of the car and pointed it at Mr. Gangi, demanding money. When the gunman shifted position, the gun tilted upward, and Mr. Gangi ducked under the trailer of an eighteen wheeler and then ran into his office. The gunman then pointed the gun at Mr. Baumer and demanded his money. Mr. Baumer placed his wallet on the ground, and the gunman exited the car, picked up the wallet, reentered the car, which then fled the scene.
NOPD Officer Terry Thomas was dispatched to investigate the armed robbery. When he arrived on the scene, Officer Thomas spoke with Mr. Gangi, who described the gunman as a dark complected, twenty-five to thirty-five year old black male with dreadlocks, brandishing a chrome revolver. Shortly after speaking with Mr. Gangi, Officer Thomas met with two people who found Mr. Baumer's driver's license and credit cards in the street about two blocks from the scene of the crime. Officer Thomas photocopied the cards, and returned them to Mr. Baumer.
Detective Douglas Butler was assigned to do the follow-up investigation of the armed robbery. Detective Butler met with Mr. Gangi and Mr. Baumer. From further investigation, Detective Butler developed the defendant as a suspect. The detective assembled a photographic lineup and presented it to Mr. Gangi, who identified the defendant as the gunman. On December 3, 2004, Detective Butler obtained a warrant for the defendant's arrest. Mr. Baumer was not able to identify the suspect from the photo lineup.
Officer Jimmy Slack arrested the defendant on May 16, 2005.
Mr. Shepard Baumer testified that as he and Mr. Gangi spoke, a car with two people drove up and stopped about five feet from them, and the man in the passenger seat demanded money at gunpoint. Mr. Gangi ran and Mr. Baumer emptied his pockets. The gunman grabbed Mr. Baumer's wallet and fled in the vehicle. Mr. Baumer was too frightened to look the gunman in the face. He did notice, however, that the perpetrator wore his hair in dreadlocks, but was unable to identify the gunman from the photos Detective Butler showed him.
Mr. Michael Gangi testified that the crime occurred at his seafood business on Mazant Street. He identified photographs of the area and explained that the robbery occurred as he and Mr. Baumer stepped out of his office into the parking lot. The vehicle the defendant was riding in pulled up to them. The defendant leaned out of the window, aimed his gun at the men and demanded money. When the gunman shifted in his seat, Mr. Gangi ran behind a nearby truck; however, he got a good look at the gunman's face. Mr. Gangi identified the defendant as the gunman from the photo lineup presented to him by Detective Butler.
A review for errors patent on the face of the record reveals none.

ASSIGNMENT OF ERROR
In a sole assignment of error, the defendant asserts that the state failed to produce sufficient evidence to support his armed robbery conviction. Specifically, he argues that the state failed to prove that he was the person who robbed Baumer at gunpoint.
In State v. Brown, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Neal, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
In this case, defendant was charged with and convicted of one count of armed robbery with a firearm. Armed robbery is defined by La. R.S. 14:64 as "... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." The defendant does not dispute that the armed robbery occurred. The evidence supports a finding of armed robbery because the victim had his wallet taken from him at gunpoint. The defendant argues, however, that the evidence was insufficient to support his conviction because the state did not prove that he was the person who robbed Baumer.
In State v. Holmes, 05-1248, pp. 8-9 (La. App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162, this Court discussed the standard to be used when a defendant disputes his identity as the perpetrator of an offense:
When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. State v. Bright, XXXX-XXXX (La. 4/11/00), 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. State ex rel. Graffafnino. V. King, 436 So.2d 559 (La.1983). However, the touchstone of Jackson v. Virginia is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. State v. Hampton, 98-0331 (La. 4/23/99), 750 So.2d 867, 880.
The defendant argues that the evidence does not negate the possibility that Gangi misidentified him as the perpetrator. He supports this assertion by pointing out that neither Baumer nor Gangi noticed that he had gold teeth and tattoos on his arms and that Baumer was unable to identify the gunman at all. As such, the defendant maintains that his conviction rests solely on the identification testimony of Gangi and a complete lack of physical evidence linking him to the robbery.
This assignment is meritless. Gangi, who stood only two feet from the gunman, testified that he looked at the gunman's eyes. Gangi explained that as a student of taekwondo, he was taught to watch an opponent's eyes to predict that opponent's actions. Gangi watched the defendant's eyes to determine if the defendant might shoot him. As for the defendant's gold teeth and tattoos, it was not surprising that neither Gangi nor Baumer noticed these physical aspects because Gangi testified that he did not have a conversation with the gunman and was focused on the gunman's face, not his arms, and Baumer, in fright, noticed only the gun.
The testimony of one witness, if believed by a jury, is sufficient evidence for a conviction. See State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56. The eyewitness in this case, Mr. Gangi, identified the defendant as the gunman. Viewing the evidence in this case in a light most favorable to the State, it is clear the prosecution proved the essential elements of armed robbery with a firearm and refuted any reasonable probability of misidentification.
For these reasons, we hereby affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The trial court sentenced the defendant to 70 years for the armed robbery conviction and to an additional five years for use of a firearm during the crime under La. R.S. 14:63.3. The trial court ordered that the sentences be served consecutively.