ROLAND L. BELSOME, Judge.
hThe defendant, Darnell Gilmore, appeals his conviction and life sentence for second degree murder, asserting that the trial court incorrectly denied his motions to suppress statements and identification. The defendant’s conviction and sentence are affirmed.

PROCEDURAL HISTORY

On June 23, 2005, the State obtained an indictment charging the defendant with first degree murder of Alissa Kovash.[1] The defendant subsequently pled not guilty to the charge. The court heard the defendant’s motion to suppress the identification on February 6, 2007, but it is unclear when the court denied the motion. The court denied the defendant’s motion to suppress his statement on October 15, 2009.
The first trial ended in a mistrial, and the State later amended the charge to second degree murder. At the conclusion of the second trial, a twelve-person jury found the defendant guilty as charged. The court denied the defendant’s motions 12for post-verdict judgment of acquittal and for a new trial. The defendant waived all delays, and the court sentenced him to life imprisonment without benefit of parole or suspension of sentence. After denying the defendant’s motion for reconsideration of sentence, the court granted his timely motion for appeal.

FACTS

On April 18, 2005, the victim, Alissa Kovash, was murdered while walking with her friend Stephanie Knight to Knight’s apartment. The two were approached by Ahmad Hill and the defendant, Darnell Gilmore. While attempting to take the victim’s purse, the defendant hit the victim with a beer bottle and shot her in the head. The two men then fled with both of the women’s purses, entered into a stolen Jeep driven by Marcus Pleasant, and sped away.
Pursuant to the police investigation, Gilmore gave a statement to the police.[2] Ms. Knight also identified the defendant in a photographic lineup. The defendant asserts assignments of error related to his statement and identification.

ERRORS PATENT

A review of the record reveals two patent errors, which do not require correction.
First, the record does not reflect that defendant was arraigned on the *50 amended charge. Failure to arraign the defendant or the fact that he did not plead is waived if he enters upon the trial without objection. It is considered as if he had pleaded not guilty. La. C.Cr.P. art. 555; State v. Scott, 97-28 (La.App. 4 Cir. 3/18/98), 709 So.2d 339, 342 (citation omitted). The record does not reflect that any objections regarding arraignment were made prior to trial. Therefore, any error with regard to the trial court’s failure to arraign the defendant was waived.
Next, the mandatory life sentence imposed was illegally lenient. The sentence was to be served without benefit of probation, parole or suspension of sentence pursuant to La. R.S. 14:30.1(B). However, the sentencing transcript reflects that the sentences at hard labor were to be served without benefit of parole or suspension of sentence. Notably, the minute entry reflects the proper restriction of all three benefits; however, the transcript prevails. State v. Washington, 05-431, p. 6 (La.App. 4 Cir. 12/7/05), 921 So.2d 139, 143.
La. R.S. 15:301.1(A) provides that “[t]he failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of parole, probation or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without the benefit of parole, probation or suspension of sentence.” La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court, and this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence resulting from the failure of the sentencing court to impose the restrictions. State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799; State v. Boudreaux, 07-89, p. 3 (La.App. 4 Cir. 8/15/07), 966 So.2d 79, 81-82, writ denied, 07-1936 (La.2/1/08), 976 So.2d 717.

\ ¿DISCUSSION

In his first assignment of error, the defendant contends that the trial court erred by denying his motion to suppress his statement. He argues that the State failed to show that his statement was voluntarily and freely given.
Pursuant to La.C.Cr.P. art. 703(D), the State had the burden of showing that the defendant’s statements were admissible. In addition, La. R.S. 15:451 provides: “Before what purports to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” See State v. Gradley, 97-641, p. 9 (La.5/19/98), 745 So.2d 1160, 1166; State v. Butler, 04-880, p. 4 (La.App. 4 Cir. 1/12/05), 894 So.2d 415, 418. As noted in State v. Vigne, 01-2940, p. 6 (La.6/21/02), 820 So.2d 533, 537, in order for a statement made by a suspect in custody to be admissible at trial, police officers must advise the suspect of his Fifth Amendment rights prior to interrogating him.
We review a trial court’s ruling on a motion to suppress under the abuse of discretion standard. State v. Wells, 08-2262, pp. 4-5 (La.7/6/10), 45 So.3d 577, 581 (citation omitted). Generally, a trial court’s ruling on a motion to suppress a statement is entitled to great weight and will not be disturbed unless clearly unsupported by the evidence. Id.
In support of his motion to suppress, the defendant argues three points. One, he was not advised of his rights. Two, he was restrained during the interrogation. LThree, the statement was not voluntary *51 as he was beaten, burned, and forced to provide a statement crafted by the officers.
With respect to the failure to advise him of his rights, Sergeant Joseph Catalanotto of the New Orleans Police Department testified both at the suppression hearing and at trial that either he or Detective Guillory advised the defendant of his rights prior to taking his statement, and Gilmore indicated he understood his rights and agreed to waive them. A recording of the statement also confirms that the defendant was advised of and waived his rights.
The defendant’s second claim that he was restrained by the officers during his statement was disputed by the testimony of Detective Roger Gorumba of the Jefferson Parish Sheriffs Office. He testified that although the defendant was handcuffed on his way to the Detective Bureau and on his way back to the Correctional Center, he took the handcuffs off of the defendant when he placed him in the interview room.
Finally, despite the allegations by the defendant that he was beaten by the detectives and coerced into giving his statement, the State produced sufficient evidence to discredit this allegation thus satisfying the court that the defendant’s statement was voluntary. Both at the suppression hearing and at the trial, Sergeant Catalanotto denied that either he or Detective Guillory beat or burned the defendant. At trial, the defendant introduced photographs of burn marks on his arms as evidence that he had been beaten.[3] However, the recorded statement |,¡reveals that the defendant denied being forced or promised anything in exchange for his statement and that his statement was given of his own free will.
Moreover, Chief Deputy Walter Gorman of the Jefferson Parish Sheriffs Office, who investigated a complaint made by the defendant about the beating, ultimately found that it was unsubstantiated. At both the suppression hearing and at trial, Chief Deputy Gorman testified that the transport officers never heard any disturbances while the defendant was being questioned. He pointed out that the defendant only complained of injury once he had been alone in the Center for a period of time. Chief Deputy Gorman testified that by the end of the statement, the defendant admitted that the burns on his arm were self-inflicted, as were the injuries to his back. Chief Deputy Gorman acknowledged that Gilmore then claimed injuries different from those alleged in the initial complaint. When Chief Deputy Gorman informed the defendant of these inconsistencies, the defendant told him to forget the matter. Further, the defendant’s testimony that the officers spent considerable time beating him and directing his statement, requiring the use of three different tapes, was cast into doubt by the timeline offered by the Jefferson Parish transport officers, Detectives Donald Meunier and Gorumba, who testified that the entire process took forty minutes, twenty minutes actually recording the statement itself.
At the suppression hearing, the trial court was faced with the defendant’s allegation of being beaten, which was contradicted by testimony by Sergeant Cata-lanotto and Chief Deputy Gorman. The trial court apparently found the |7testimony of the officers more credible than that of the defendant. Where conflicting testimony is offered, credibility determinations lie within the sound discretion of the trial judge, and his ruling will not be disturbed unless clearly contrary to the evidence. State v. Gradley, 97-641, pp. 9-10 (La.5/19/98), 745 So.2d 1160, 1166 *52 (citing State v. Vessell, 450 So.2d 938, 943 (La.1984)).
Given the testimony adduced at the suppression hearing, there is no indication that the court abused its discretion in its credibility finding. This conclusion is bolstered by the testimony of Detectives Meunier and Gorumba at trial. See State v. Carter, 99-2234, p. 18 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 138, writ denied, 01-903 (La.2/1/02), 808 So.2d 333 (citation omitted), (where this Court held when reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case.)
In his remaining assignment of error, the defendant asserts that the trial court erred by denying his motion to suppress the identification made by Ms. Knight. He asserts two things. One, Ms. Knight viewed news articles that contained the photographs of him and his co-defendants, tainting the identification. Two, the identification was unreliable because she was too intoxicated at the time of the murder to be able to identify the perpetrator.
A defendant has the burden of showing that the identification was suggestive and that the procedure resulted in the likelihood of misidentification. State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Holmes, 05-1248, p. 6 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1161. A “suggestive identification” is one that unduly focuses the witness’s attention on the defendant. However, even if a defendant shows that an identification is suggestive, a defendant’s due process rights are only violated if there is a showing of the likelihood of misidentification. Holmes, supra; State v. Thibodeaux, 98-1673, p. 21 (La.9/8/99), 750 So.2d 916, 932. A trial court’s ruling on the admissibility of an identification is entitled to great weight and must not be disturbed unless the trial court abused its discretion by so ruling. Holmes, supra; State v. Offray, 00-959 (La.App. 4 Cir. 9/26/01), 797 So.2d 764.
The defendant does not attack the actual procedure that Sergeant Catalanotto and Detective Guillory used in showing Ms. Knight the three photographic lineups. Instead, the defendant’s argument is tied to Ms. Knight’s admission that she viewed the photographs of all three the defendants on the Internet at some point before viewing the lineups.
Here, the defendant cannot show that Ms. Knight’s pre-trial identification was tainted by an unconstitutionally suggestive procedure. As cited by the State, in Perry v. New Hampshire, — U.S. —, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012), the United States Supreme Court recently explained that the dangers of identification testimony are ordinarily to be combated by the safeguards inherent in the criminal justice system, including the rights of counsel, compulsory process and confrontation, and reliability is determined by the finder of fact. A pretrial determination of reliability by the court is required only where the identification ^results from impermissibly suggestive pretrial procedures arranged by the police. See Id. at 721 & n. 1, 724-28, 730. Specifically, the Court held:
When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.
Id. at 721.
The defendant cannot show that there was any “improper law enforcement activi *53 ty (4)27 involved” in Ms. Knight’s identification. Here, the “suggestiveness” to which the defendant points was Ms. Knight’s admission that she read articles on the murder on the nola.com website, which included photographs of all three defendants after their arrests. He has made no allegation that the identification procedure that the officers subsequently used to show her the lineups was suggestive.
Besides, the jury was made aware that Ms. Knight saw the defendant’s photograph before viewing the lineup. Tellingly, she only identified the defendant from the three lineups, even though she viewed photographs of all three defendants, and two men were directly involved in the robbery that led to Ms. Kovash’s shooting.
The defendant also asserts that Ms. Knight was so intoxicated that she could not accurately view the perpetrator, calling the reliability of her identification into question. Ms. Knight acknowledged that she had consumed several beers, but she 11(1did so over the span of at least six hours. Since this issue does not involve a suggestive pre-trial procedure arranged by the police, it was properly presented to the jury to make a credibility determination. See Perry, supra.
Since there is no support that a suggestive identification was arranged by the police, there is no basis for suppression. Accordingly, we find that there was no abuse of discretion in the denial of the motion.
The defendant’s conviction and sentence are affirmed.
AFFIRMED

. The indictment also charged Marcus Pleasant and Ahmad Hill with the murder. The cases were severed on November 8, 2012. Hill was acquitted and Pleasant was convicted. Pleasant's appeal, 201 l-KA-1675, was affirmed by this Court on October 17, 2012.

. Gilmore's statement was given at the Jefferson Parish Detective Bureau, as he was incarcerated in Jefferson Parish at the time.

. The photographs were taken the day after the defendant gave his statement.