# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-642


**STATE OF LOUISIANA**

**VERSUS**

**JOSEPH BARTON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2020-CR-223147
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## CHARLES G. FITZGERALD
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.


**AFFIRMED.**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 1481**
**Monroe, Louisiana 71210**
**(318) 855-6038**
**Counsel for Defendant/Appellant:**
    **Joseph Barton**


**Charles Riddle**
**District Attorney**
**Twelfth Judicial District**
**Anthony F. Salario**
**Elizabeth E. Williams**
**Assistant District Attorneys**
**Post Office Box 1200**
**Marksville, Louisiana 71351**
**(318) 240-7123**
**Counsel for Appellee:**
    **State of Louisiana**

**FITZGERALD, Judge.**

Defendant, Joseph Barton, appeals his conviction and sentence for armed robbery with a firearm.

## PROCEDURAL HISTORY

In September 2020, Defendant was charged by bill of information with armed robbery while armed with a firearm. Prior to trial, Defendant filed a motion to recuse the district attorney. This motion was denied by the trial court.

The matter proceeded to jury trial in March 2022. At the conclusion of trial, the jury unanimously found Defendant guilty as charged. A few days later, Defendant filed a motion for judgment notwithstanding the verdict. And a few weeks after that, Defendant filed a motion for post-verdict judgment of acquittal. Both motions were denied prior to the imposition of sentence.

In May 2022, the trial court sentenced Defendant to forty years at hard labor for the armed-robbery conviction and five years at hard labor to be served consecutively for the firearm enhancement. Both sentences were ordered to be served without benefit of parole, probation, or suspension of sentence. Defendant, in turn, filed a motion to reconsider sentence. This motion was also denied by the trial court. Defendant now appeals his conviction and sentence.

On appeal, Defendant asserts four assignments of error:

1. The State failed to prove beyond a reasonable doubt [Defendant] was guilty of armed robbery. The victims of the robbery could not identify [Defendant]. The only identification of him as one of the suspects was by virtue of body language or the testimony of [Deondrake] Guillot, who was admittedly one of the suspects. No physical evidence tied [Defendant] to this offense.

2. The Trial Court erred in denying the Motion to Recuse the District Attorney in this matter.

3.      The sentence imposed in this case was constitutionally excessive considering the facts and circumstances of the case and the background of [Defendant]. [Defendant] is 57 years old and the sentence of 45 years imposed in this case is effectively a life sentence. As such, it is unconstitutionally harsh and excessive. [Defendant] was employed, no one was physically harmed, no shots were fired, and a lesser sentence would not deprecate the seriousness of the offense.

4.      Considering the excessive nature of the sentence in this case the Trial Court erred in denying the Motion to Reconsider Sentence in this case.

## LAW AND ANALYSIS

## I.      Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two potential patent errors but neither requires correction.

First, the bill of information charges Defendant with "armed robbery; use of a firearm; additional penalty," citing La.R.S. 14:64.3. Louisiana Revised Statutes 14:64.3 provides an enhanced sentence for an offender who commits armed robbery with a firearm. But the crime of armed robbery is defined by La.R.S. 14:64, and this statute is not cited in the bill of information. Thus, we turn to La.Code Crim.P. art. 464, which concerns the nature and contents of an indictment. Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Here, Defendant does not assert that he was misled to his prejudice because of the State's failure to cite La.R.S. 14:64 in the bill of information. The error with

2

the bill of information is therefore harmless. *See State v. Allen,* 09-1281 (La.App. 3 Cir. 5/5/10), 36 So.3d 1091.

Second and finally, we address whether the trial court's statement regarding diminution of sentence was a ruling or an advisement. At the sentencing hearing, the trial court stated that "[a]rmed robbery is a crime of violence; therefore, this sentence is not subject to diminution for good behavior. This is not an enhanced sentence." The minutes of sentencing further provide as follows:

> AS REQUIRED BY ARTICLE 890.1 OF CODE OF CRIMINAL PROCEDURE AND ARTICLE 894.1D OF THE CODE OF CRIMINAL PROCEDURE, THE COURT DESIGNATED THAT THE CRIME INVOLVED WAS A CRIME OF VIOLENCE OR ATTEMPTED CRIME OF VIOLENCE AS DEFINED OR "AS REQUIRED BY ARTICLE 890.1 OF THE CODE OF CRIMINAL PROCEDURE ENUMERATED IN R.S. 14:2 "13", AND ALSO INFORMED THE DEFENDANT WHETHER, PURSUANT TO THE PROVISIONS OF R.S. 15:571.3, THE DEFENDANT'S SENTENCE WAS NOT SUBJECT TO DIMINUTION FOR GOOD BEHAVIOR, AND WHETHER THE SENTENCE IMPOSED WAS ENHANCED PURSUANT TO R.S. 15:529.1 ET SEQ[.]

Importantly, "Louisiana Code Criminal Procedure Article 890.1 was amended in 2012 and no longer authorizes a trial court to deny or restrict diminution of sentence for crimes of violence. 2012 La. Acts No. 160. Trial courts are no longer required to advise defendants of whether their sentences are subject to diminution." *State v. Watson*, 21-725, pp. 7-8 (La.App. 3 Cir. 4/27/22), 338 So.3d 95, 100.

In *Watson*, the trial court stated that "[t]hese sentences are crimes of violence and are not subject to diminution for good behavior, [and] these are not enhanced sentences." *Id*. The minutes of sentencing in that case reiterated the trial court's statement. On those facts, a different panel of this court concluded that the trial court's statement was merely advisory.

3

In our case, the relevant facts are substantially similar to those presented in *Watson*. And like *Watson*, we conclude that the trial court's statement regarding diminution of sentence was an advisement. Thus, there is no patent error in this instance.

## II.     First Assignment of Error

In his first assignment of error, Defendant claims that the State failed to prove beyond a reasonable doubt that he was guilty of armed robbery with a firearm. He specifically contends that he was not the perpetrator of this crime. Hence, Defendant challenges the sufficiency of the evidence.

A sufficiency-of-the-evidence challenge is reviewed on appeal under the standard set forth by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). In that case, the United States Supreme Court explained that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

Commenting on *Jackson*, the Louisiana Supreme Court cautioned that "[t]his standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521. After all, the appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

Put simply, a reviewing court must afford great deference to a jury's decision to accept or reject the testimony. *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So.2d 566, 02-2997 (La.

6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004). "Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." *Id*. at 626.

### A.    *Summary of the Trial Evidence*

Detective Kevin Hill, of the Marksville City Police, testified on behalf of the State.  He explained that at around noon on April 3, 2020, he received a radio call that "an armed robbery was taking place at the Check Into Cash, subject robbed the business and then fled in a white vehicle."  While en route, he received a "description of a white in color SUV possibly an Escalade[.]"  Upon arriving at Check Into Cash, Detective Hill began taking statements from the employees.  As he and other officers continued with statements, he "received another call over the radio that there was a white in color SUV located on Sookie Road in Mansura that was on fire[.]"  This was not far from the Check Into Cash store.

According to Detective Hill, the white SUV was soon identified as a 2016 Ford Edge belonging to Margaret Schuler. Detective Hill confirmed that he spoke with Margaret during his investigation.  As he put it, Margaret ultimately told him that she had asked Defendant to destroy the vehicle because she could no longer afford the note payments.

Detective Hill next testified about a surveillance video that was obtained from Check Into Cash.  According to Detective Hill, the video shows two clerks, one male perpetrator brandishing a 9 mm handgun and zip-tying the employees, and a second male perpetrator securing a customer with zip ties.  According to Detective Hill, approximately $4,564.00 was stolen from the business.

5

Detective Hill also testified about a second video. He explained that this video was obtained from the Verizon store located adjacent to Check Into Cash. According to Detective Hill, this video shows two people wearing wigs and masks and walking on the sidewalk in front of the Check Into Cash store. The video also shows these suspects driving a white SUV. Detective Hill identified the suspects as Defendant and Deondrake Guillot. According to Detective Hill, he was able to identify Defendant and Deondrake by observing their body movements and mannerisms. Detective Hill explained that he has known both men for years. He also pointed out that Defendant held the gun in his left hand.[1]

The clerks identified in the Check Into Cash video, Tabitha Lavalais and Alexandra Simon, also testified at trial. Both employees testified that two black men entered the store wearing masks, that the first man pointed a gun at them, and that the second man stood by the door. They also testified that the first man forced them to lie face down while he bound them with zip ties.

Tabitha further explained that the first man who entered was skinnier than the second man. In her opinion, the second man weighed about 200 pounds. The first man, as she put it, moved much quicker than the second man. She also testified that there was no conversation between the two men: the first man simply gave orders to the second man.

In addition, Alexandra testified that the first man held the gun in his left hand, that the first man was a little taller than the second man, that the first man was "of a lighter color," that the first man sounded older (like he was in his fifties), and that the second man sounded younger (like he was in his twenties).

---

[1] Both videos were admitted into evidence,

Margaret Schuler also testified for the State at trial. She explained to the jury that she owned a white 2016 Ford Edge SUV, that the vehicle was broken and unable to be fixed, that she called a man and told him she wanted to get rid of it, that two males whom she did not know retrieved the vehicle from her house, and that she knew these men would destroy the vehicle. Margaret's SUV was taken on April 2, 2020, and she reported it as stolen the following morning. She was subsequently informed by police that her car had been set on fire and then abandoned. Margaret explained that until the police called her in for questioning, she did not know the names of the two men who took her SUV. According to Margaret, she identified both men in a photograph lineup at the police station. She also identified Defendant in open court, noting that he appeared heavier in court than he was when he retrieved her vehicle. She described Deondrake as being younger and quieter than Defendant. She also recalled that Deondrake had darker skin.

Deondrake was perhaps the most significant witness for the State. Deondrake confirmed that he had been charged with crimes from the April 3, 2020 incident, but he had not yet been to trial. Deondrake stated that at the time of the robbery, he was twenty-one years old and weighed approximately 210 pounds. He explained that Defendant is his great-uncle on his mother's side.

When asked about the night before the robbery, Deondrake recalled riding in Defendant's Dodge truck as Defendant drove them to Pineville to pick up a vehicle at Margaret's house. Deondrake testified that he did not know Margaret and that he was there at Defendant's request. According to Deondrake, the vehicle at Margaret's home was a white Ford SUV. And once they were able to get the SUV started, he drove the SUV from Margaret's house in Pineville to the home of Defendant's niece

7

in Marksville, which is where he and Defendant left the vehicle until the following morning.

When asked about the next morning—the morning of April 3, 2020—Deondrake explained that Defendant picked him up and told him for the first time that they were going to commit a robbery. Deondrake further explained that he did not want to do this, but he had no choice because of Defendant's threats. They made a quick stop at Defendant's house and then Defendant drove them in his Dodge truck to his niece's home to pick up the white SUV. After switching vehicles, Defendant drove them in the white SUV to Check Into Cash. Once there, Defendant parked next to the Verizon store. They exited the SUV and walked towards Check Into Cash, but they then returned to the vehicle and drove around for a bit. Deondrake explained that they were waiting for people to leave the store. Ultimately, Defendant parked the SUV and both men exited wearing facemasks, wigs, glasses, and loose clothing. Deondrake testified that he was afraid, but he did not leave because he thought Defendant would come after him.

Deondrake then testified that Defendant was the first to enter the Check Into Cash store. But Deondrake admitted that he entered shortly thereafter. According to Deondrake, Defendant pulled out a gun and pointed it at the workers. Deondrake, meanwhile, remained standing by the front door serving as a lookout. Next, Defendant told the employees that he wanted money and that they should not press any panic buttons or call the police. Next, Defendant grabbed the money and tied up the workers. At this point, Deondrake recalled that a woman was attempting to enter into the store. Defendant saw this and told Deondrake to let her inside and then bring her to the front. Deondrake complied, and Defendant ultimately tied her up.

Deondrake admitted that he took the gun when Defendant placed it upon a desk to search its drawers. According to Deondrake, he and Defendant left the store soon thereafter. Defendant then drove them back to the niece's home to pick up his Dodge truck. Once there, Deondrake exited the SUV and got into Defendant's Dodge truck. Defendant remained in the white SUV. Deondrake then followed Defendant as they drove down a rocky road near Cocoville. They stopped, and Defendant burned everything including the face masks and wigs. Deondrake testified that Defendant poured gas in and around the SUV before lighting it on fire. Thereafter, they drove to Walmart to buy a change of clothes.

When specifically asked about the gun, Deondrake testified that he gave it back to Defendant after leaving Check Into Cash. Deondrake reiterated that he was afraid of Defendant and that he followed Defendant's orders to pick up the gun during the robbery. Deondrake explained that when they exited Check Into Cash, Defendant told him to get into the SUV and to hand over the gun. Deondrake complied. Deondrake then explained that he did not know what happened to the gun after he gave it back to Defendant. As for the stolen money, Deondrake testified that Defendant kept it in a little bag.

The defense called several witnesses including Latoya Ford. Latoya testified that Defendant is her fiancé and that they had been living together for several years. Latoya stated Defendant was fifty-seven years old and has pain in his legs and back which limits his mobility. When asked about April 3, 2020, she recalled that Defendant had been building a fence for "Mr. John Ed." But she also recalled that her sister had hired Defendant to build a porch at the sister's home. According to Latoya, Defendant spent the early mornings and late evenings working on her

sister's porch, and Defendant worked on John Ed's fence during the day. But Latoya admitted that after April 3, 2020, Defendant left for a construction job in Texas.

Turning back to April 3, 2020, Latoya explained that she was working at Popeyes on that date, noting that her shift ended at 4:00 p.m. Latoya testified that she saw Defendant at noon on April 3, 2020, because she bought lunch for him, and she let him into the building. Latoya specifically recalled the time being 12:00 (noon). She also recalled that Defendant left soon thereafter to go to her sister's house. During cross-examination, Latoya admitted to having been charged as an accessory after the fact, and she admitted to a 2017 conviction for simple burglary.

Donald Sampson also testified for the defense. Donald initially explained that he lives next door to Latoya's sister. He then confirmed that he knew Defendant, and that Defendant had been building a porch for Latoya's sister on or about April 3, 2020. According to Donald, Defendant would show up just about every morning and start around 11:00.

The defense also called Latoya's sister, Constance Ford. Constance confirmed that Defendant built the porch for her home. Constance recalled that it took Defendant about two weeks to complete the project. She further recalled that Defendant would normally arrive in the morning and work until the afternoon.

The parties then stipulated to the testimony of John Ed Laborde. The substance of this testimony was that John Ed lived near Constance, that John Ed saw Defendant at Constance's house at 7:00 a.m. on April 3, 2020, and that Defendant was no longer there when John Ed returned home several hours later at 11:00 a.m.

## B. Sufficiency of the Evidence

"Armed robbery" is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by

use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). In addition, La.R.S. 14:64.3(A) states in relevant part that "[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence."

Defendant here does not argue that the State failed to establish any of the essential statutory elements of his conviction, but rather he argues that the State failed to prove beyond a reasonable doubt his identity as the perpetrator. Thus, Defendant argues that he has been wrongfully accused (and convicted) because he had nothing to do with the April 3, 2020 armed robbery.

As a matter of law, the State is required to prove Defendant's identity as the perpetrator. *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So.2d 583, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007). In *State v. Holmes*, 05-1248, pp. 8-9 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1162, the fourth circuit explained as follows:

> When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. *State v. Bright,* 1998-0398 (La.4/11/00); 776 So.2d 1134, 1147. The fact-finder weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983). However, the touchstone of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is rationality and that "irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witnesses. *State v. Hampton,* 98-0331 (La.4/23/99); 750 So.2d 867, 880.

Thus, for this court to affirm Defendant's conviction, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any

11

rational trier of fact could have concluded beyond a reasonable doubt that Defendant knowingly participated in the armed robbery of the Check Into Cash store on April 3, 2020.

As addressed previously, Deondrake identified Defendant at trial. Deondrake testified that he and Defendant picked up the white Ford SUV on April 2, 2020, that Defendant drove the SUV to the Check Into Cash store on April 3, 2020, that he and Defendant entered into that store wearing masks, that Defendant pointed a gun at the employees and demanded money, that Defendant took an undetermined amount of money, and that Defendant ultimately burned the SUV after committing the robbery. Deondrake provided details and facts about the incident that matched the testimony of other witnesses including Detective Hill, though Detective Hill provided more detail about the things of value that were taken from the Check Into Cash: Detective Hill testified that approximately $4,564.00 was taken from the business.

In *State v. Higgins*, 03-1980, p. 6 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005), the Louisiana Supreme Court explained that "in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion."

Here, multiple witnesses testified against Defendant. And although Deondrake was also charged in this incident, he was not testifying pursuant to a plea agreement. The jury was made aware of these facts, and defense counsel examined Deondrake about his credibility. Indeed, the only witness who contradicted Deondrake's testimony was Latoya. Latoya was Defendant's fiancé, and she testified that Defendant was with her at noon on April 3, 2020, which is when the armed robbery was happening. But in the end, the jury rejected Latoya's version of

12

events, choosing instead to believe Deondrake's testimony about Defendant's involvement in the armed robbery.

As summarized by the supreme court in *State v. Neal*, 00-674, pp. 11-12 (La. 6/29/01), 796 So.2d 649, 658-59 (citations omitted), *cert. denied*, 535 U.S. 1075, 122 S.Ct. 1957 (2002):

> [T]he jurisprudence in Louisiana generally holds that an accomplice is qualified to testify against a co-perpetrator even if the prosecution offers him inducements to testify; such inducements would merely affect the witness's credibility. As the United States Fifth Circuit has found, "a conviction may be based even on uncorroborated testimony of an accomplice or of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face." *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir.1991).

Based on the foregoing, we conclude that a rational trier of fact could have found proof beyond a reasonable doubt that Defendant was guilty of the crime of armed robbery with a firearm. It was the jury's prerogative to assess the credibility of the witnesses and to accept or reject their testimony. We will not second guess the jury's credibility determinations, nor will we impinge on its role as fact finder. Accordingly, Defendant's conviction is affirmed.

## III. Second Assignment of Error

In his second assignment of error, Defendant contends that the trial court erred in denying his motion to recuse the district attorney. However, defense counsel never addressed this assignment in his brief. We therefore consider the assignment as having been abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(4).

## IV. Third Assignment of Error

In his third assignment of error, Defendant contends that the sentence imposed was constitutionally excessive considering the facts and circumstances of the case.

Defendant points out that he is fifty-seven years old, and that his sentence of forty-five years is effectively a life sentence. Defendant also notes that he was employed, that no one was physically harmed, and that no shots were fired. Because of this, he suggests that a lesser sentence would not deprecate the seriousness of the offense.

Under La.R.S. 14:64, the sentencing range for armed robbery is imprisonment for not less than ten years and for not more than ninety-nine years. And under La.R.S. 14:64.3, the sentence for the firearm enhancement is an additional five years. The trial court ultimately sentenced Defendant to forty years at hard labor for the armed robbery conviction and five years at hard labor to be served consecutively for the firearm enhancement.

The standard of review for excessive-sentence claims was addressed in *State v. Barling*, 00-1241, 00-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. There, this court explained:

> La. Const. art. 1, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*Id.* at 1042 (citations omitted).

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, we further explained:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the

punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

Louisiana Code of Criminal Procedure Article 881.4(D) states that "[t]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." To this end, La.Code Crim.P. art. 894.1 enumerates aggravating and mitigating factors to be considered by the trial court in imposing a sentence. In relevant part, it provides that the trial court "shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

We now turn our attention to the nature of Defendant's crime. Armed robbery is a crime of violence, La.R.S. 14:2(B), and Defendant used a firearm to commit this violent crime. He took more than $4,500.00 from Check Into Cash, and he did so by using intimidation and force: Defendant pointed a 9 mm handgun at the store's employees and customers while demanding money. In addition, the employees and customers were forced to lie face down on the floor while Defendant bound them with zip ties. The trial court stated during the sentencing hearing that this was a horrible incident for the victims because they were in definite fear of danger.

Next, we examine the nature and criminal background of the offender. At the sentencing hearing, the trial court noted that the only request for leniency was a letter from Defendant. Therein, Defendant indicated that he had been incarcerated for thirty years, that he could not find footing in society, and that the living conditions in prison were horrible. The trial court then turned its attention to Defendant's criminal history report, noting that Defendant had at least six prior felony convictions with indications that he may have had as many as nine.

The trial court next reviewed the sentencing guidelines and found that there was an undue risk of Defendant committing another crime without proper rehabilitation, that Defendant needed a correctional sentence to an institution, and that any lesser sentence would deprecate the seriousness of the crime.

The trial court then determined that there were six aggravating factors. First, Defendant displayed deliberate cruelty to the victims. Second, Defendant knowingly created a risk of death or great bodily harm to more than one person. Third, Defendant used threats or actual violence to commit the offense. Fourth, the offense resulted in significant economic loss to the business. Fifth, Defendant used a dangerous weapon. And sixth, Defendant was a leader in concert with another person and acted as supervisor of the events. By comparison, there was only one mitigating factor: Defendant's letter. As the trial court put it, Defendant was a career criminal who made the decision to commit a very serious offense.

At this point, we turn our attention to the sentences that were imposed for similar crimes. In *State v. Scie*, 13-634, pp. 6-7 (La.App. 5 Cir. 1/15/14), 134 So.3d 9, 12, the fifth circuit affirmed the defendant's forty-five-year sentence for armed robbery along with a five-year consecutive penalty provision for use of a firearm during the commission of an armed robbery, explaining as follows:

16

Upon review of the record in this case, we find that defendant's sentences for his conviction for armed robbery under La. R.S. 14:64 and 14:64.3 are not unconstitutionally excessive. The Louisiana Supreme Court has recognized that the crime of armed robbery "is a pernicious offense" which "creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender." *State v. Sam,* 12-459 (La.App. 5 Cir. 11/27/12), 105 So.3d 988, 991-92, *writ denied,* 12-2766 (La.5/31/13), 118 So.3d 389 (quoting *State ex rel. Sullivan v. Maggio,* 432 So.2d 854, 856 (La.1983)). Moreover, our jurisprudence has recognized that sentences ranging from 25 to 50 years imprisonment at hard labor for convictions for armed robbery are not excessive. *Id.*; *see also State v. Burton,* 12-1321 (La.App. 4 Cir. 5/8/13), 116 So.3d 863; *State v. Stipe,* 10-877 (La.App. 3 Cir. 3/9/11), 59 So.3d 480.

Additionally, in *State v. Jackson*, 01-129 (La.App. 5 Cir. 6/27/01), 790 So.2d 720, *writ denied*, 00-2528 (La. 10/5/01), 798 So.2d 960, the defendant was sentenced to forty-nine years at hard labor on each of his seven counts of armed robbery and twenty-five years on one count of attempted armed robbery, with sentences to run concurrently. The fifth circuit ultimately affirmed the sentences, noting that forty-nine years fell in the middle of the sentencing range, which at the time for Defendant was between five years and ninety-nine years. *Id*.

In the end, the trial court here provided extensive reasons for its sentence, and the record contains a sufficient factual basis to support the sentence that was imposed. The trial court thus did not abuse its discretion.

## V.     Fourth Assignment of Error

In his fourth and final assignment of error, Defendant claims that the trial court erred in denying his motion to reconsider sentence. However, at the hearing on this motion, defense counsel simply argued that the overall sentence was excessive. Based on our previous analysis, Defendant's sentence was not constitutionally excessive. This assignment is therefore without merit.

## DECREE

For the above reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**